655 So.2d 416 (1995)
In re Tutorship of the Property of Alicia St. John HUDDLESTON.
No. 95-CA-97.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 1995.
*417 Albert J. Huddleston, Kenner, pro se and for appellant Alicia St. John Huddleston.
Lance J. Arnold, Baldwin & Haspel, New Orleans, for appellee Jerome J. Reso, Jr.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
This is an appeal by Albert Huddleston and Alicia St. John Huddleston (Alicia) from a judgment fixing the fee of a curator ad hoc for protecting the property interests of Alicia during her minority. The curator was appointed in 1989, when Alicia was 13, and was discharged in 1994, after she reached her majority. The judgment discharging the curator included an order awarding fees and costs to the curator in the amount of $38,082.42. We vacate the judgment and remand with instructions.
Alicia inherited a one-fourth interest in the estate of her mother, Aurelia Madeline Steger Huddleston (Madeline), who died in 1981. Madeline's estate contained substantial assets, much of which was community property acquired during her marriage to Albert Huddleston. In 1989, Alicia's adult siblings, Meghan Huddleston Del Giorno, Kevin Doyle Huddleston and Lindsay Madeline Huddleston (adult children), sought appointment of a separate tutor for Alicia's property, pursuant to La.Code Civ.P. art. 4069. They alleged that their father, Albert Huddleston, had misrepresented their mother's assets in the succession proceedings, had mismanaged the properties, had illegally assumed entire control of the property interests after his legal usufruct was terminated by his remarriage and had filed fraudulent federal estate tax returns.
As a result of the fraudulent tax returns, the children as heirs had been assessed additional federal estate taxes of over $1,000,000 each, while Albert Huddleston had been convicted in federal court of tax fraud and sentenced to two years in prison. Albert Huddleston *418 also had filed for bankruptcy, listing himself as sole owner of several corporations that were once property of the former community between himself and Madeline. Based on these actions, the adult children asserted that their father was not the proper party to be appointed tutor of Alicia's property.
On August 2, 1989, pursuant to a consent judgment, the trial court appointed Jerome J. Reso, Jr. as curator ad hoc to represent Alicia's interests "in connection with the bankruptcy proceedings of Albert Huddleston and related companies ... and to take any other action in state or federal court to protect the interests of the minor." The consent judgment also ordered, "[T]he initial fee for the curator ad hoc shall be limited to a total of $5,000.00, which sum is to be guaranteed by Albert J. Huddleston. Any additional fees must first be authorized and approved by this Court." In addition, the consent judgment confirmed Albert Huddleston as Alicia's natural tutor.
On February 2, 1990, the curator ad hoc filed a motion to increase the fee limitation from $5,000 to $25,000, under the same terms and conditions as the initial fee. The trial court granted the motion on the same day. No party sought review of that order.
On June 12, 1990, the curator filed a motion for interim payment of his fees and for further instructions. He alleged that, as of that date his fees for services and costs incurred totaled $20,889.54, but that no fees had been paid. On July 13, 1990, the court signed an order that the curator be paid $20,889.54 for services rendered through August 30, 1990. The record reveals no opposition to the motion nor any attempt to seek review of the order.
On March 16, 1992, on the curator's motion, the trial court ordered the curator to receive any and all funds from Alicia's share of certain note payments, to apply $25,000 of those funds to pay the fees approved by the trial court's February 2, 1990 order, and to deposit any amounts in excess of $25,000 in an interest-bearing account. Albert Huddleston, as natural tutor of Alicia, opposed the increase in the curator's fee, but sought no review of the order granting the increase.
On October 15, 1993, the curator filed a motion to be discharged as curator and for payment of fees, alleging that Alicia was no longer in need of a curator because she had attained the age of majority. The motion described briefly the duties that he had performed as curator on behalf of the minor and stated that, not only had he received no payment pursuant to the 1992 order regarding fees, but also that he had incurred additional fees and expenses. The curator requested that his fees, costs and legal expenses, in the total amount of $38,082.42, be approved for payment by the trial court, that sufficient proceeds of the funds held in trust for Alicia be paid to him in satisfaction of the fees and costs, and that he be released and discharged from his appointment as curator. Albert Huddleston filed oppositions to the curator's fee increase, on his own behalf and on Alicia's behalf.
A hearing took place on January 6, 1994, at which counsel presented argument to the court for and against the curator's motion, but offered no testimony and introduced no exhibits. Counsel for the curator advised the trial judge that the curator's invoice for services could be presented to the court for in camera inspection, to which the judge responded, "All right." The invoices were not, however, placed in evidence, nor does the record indicate that the trial judge actually reviewed them.
On June 24, 1994, the trial court rendered judgment as follows: (1) ordering that Jerome J. Reso Jr. be released and discharged from his appointment as curator ad hoc for Alicia St. John Huddleston; (2) approving as reasonable the curator's fees and costs in the amount of $38,082.42; (3) ordering that "any and all funds ... held in trust now and in the future by [the law firm of] Stone, Pigman, Walther, Wittmann & Hutchinson for the benefit of Alicia St. John Huddleston be paid to Jerome J. Reso, Jr., as curator ad hoc now and until such time as said funds are exhausted or his fee is satisfied"; and (4) ordering that the curator's fee and costs in the amount of $38,082.42 be taxed as court costs against the "losing party," Albert J. Huddleston. Alicia has appealed, appearing through *419 Albert Huddleston as her attorney, and Albert Huddleston has appealed individually.

Evidence to Support Fee The appellants contend that the trial court abused its discretion in fixing the amount of the fee because the January 6, 1994 hearing was not a rule to fix the curator's fee and tax costs and because there was insufficient evidence for the court to determine the fee in any amount.
The curator asserts that $20,889.54 of the fees sought, which is the amount approved by the trial court on June 13, 1990, are beyond the scope of appellate review because the appeal period has expired.
We find no merit in the argument that the proceeding in which the fee was set was improper because it was not a rule to fix the fee. It was a hearing on the curator's motion for payment of costs; therefore, the interested parties were properly apprised of its purpose and appeared before the trial court to present their respective arguments.
We do find merit, however, to the contention that the evidence was insufficient to establish the amount of the curator's fee. Attorney's fees are subject to review and control by the courts. Leenert's Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982), abrogated on other grounds by Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 105 (La.1979). Courts may inquire as to reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. State, DOTD v. Williamson, 597 So.2d 439, 441-442 (La.1992).
Factors to be considered in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. Id. These factors are derived from the Louisiana Bar Association's Rules of Professional Conduct. See State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.5(a), La.R.S. foll. 37:219.
Most of these particulars usually can be determined by the trial court and this court by reviewing the pleadings and evidence in the record in the case in which the curator was appointed. In the case before us, however, the curator was appointed both for purposes of this litigation and to protect the interests of Alicia Huddleston in the federal bankruptcy proceedings and appeals therefrom. Thus, the record before us contains nothing to substantiate the work of the curator. Further, because the curator did not submit into evidence his timesheets, statements, etc., we have nothing to review. We have no basis on which to determine whether the fee awarded was reasonable.
Accordingly, we deem it necessary to vacate the judgment and remand the matter to the trial court for the presentation of evidence regarding the reasonableness of the fee. If the curator feels, as indicated in the transcript, that matters contained in his timesheets and/or statements are privileged material to which Albert Huddleston and others should not be privy, then the curator may seek an appropriate protective order. The evidence offered must, however, be preserved for purposes of appellate review.

Liability for Curator's Fee
The appellants also take issue with the trial court's rulings on who is liable for payment of the curator's fee. They contend that the trial court erred in ordering that the fee be collected from Alicia's inheritance, arguing that a minor cannot be held liable for attorney's fees or for a curator's fee. Further, Albert Huddleston asserts that the trial court erred in declaring him to be the "losing party" and taxing the fee as costs against him. He argues that there is no "losing party" in this suit, because it was instituted for the purpose of appointing a tutor over a minor's property, but no tutor was appointed and the parties agreed upon a compromise appointment of a curator ad hoc. The appellants contend that the adult children should be cast for the curator's fees.
*420 Attorneys in Louisiana commonly use the term "curator ad hoc" to describe an attorney appointed to represent an unrepresented party such as an absent defendant, a minor, or a mental incompetent (La.Code Civ.P. art. 5091); an attorney appointed to represent the child in an action to disavow paternity (La.Code Civ.P. art. 5091.1); or an attorney appointed to assist the judge in an adoption case (La.Code Civ.P. art. 5091.2).
La.Code Civ.P. art. 5096 provides, "The court shall allow the attorney at law appointed to represent a defendant a reasonable fee for his services, which shall be paid by the plaintiff, but shall be taxed as costs of court."
An attorney appointed as a curator is entitled to a reasonable fee for his or her services. La.C.C.P. art. 5096. In determining a curator's fees, the trial court should consider the nature of the case, the amount in controversy, the responsibility incurred, the complexity of the issues, the legal experience and knowledge of the attorney appointed as curator, and the ability of the plaintiff to pay. [Citation omitted.]
Federal Nat. Mortg. Ass'n v. Brown, 93-1863 (La.App. 4 Cir. 1/13/94), 631 So.2d 521, 523.
Here, however, the adult children initially sought appointment of a tutor for Alicia, not a curator. Tutors normally are compensated from the property of the minor for whose benefit they are appointed. See La.Code Civ.P. art. 4274. In this case, due to the consent judgment, a curator, rather than a tutor, was appointed to represent Alicia's property interests. That consent judgment provided that the curator's "initial fee" be limited to $5,000 "which sum is to be guaranteed by Albert J. Huddleston." Accordingly, Albert Huddleston is liable for the first $5,000 of the curator's fee.
However, the consent judgment did not make Albert Huddleston liable for any amount beyond $5,000. Further, the trial court obviously was unsure what rule of law should be applied to the assessment of the remainder of the curator's fees and costs tutorship law, curatorship law or the general law relating to apportionment of costs. The trial judge applied tutorship law when he ruled that the curator's fees and costs should be paid from any funds held in trust for Alicia by the Stone, Pigman law firm. At the same time, however, he applied the general rule on taxing of costs by also assessing costs against Albert Huddleston as the "losing party."
La.Code Civ.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
A trial court has broad discretion in assessing court costs and may render judgment for costs against any party as it may consider equitable. Earles v. Ahlstedt, 591 So.2d 741, 747 (La.App. 1st Cir.1991). While it is the general rule to tax the party cast in judgment, the trial judge may assess the costs of a suit in any equitable manner. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504, 510 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1359 (La.1984). On review, a trial court's assessment of costs can be reversed only upon a showing of abuse of discretion. Id.; Dornier v. Live Oak Arabians, Inc., 602 So.2d 743, 749 (La.App. 1st Cir.1992), writ denied 608 So.2d 177 (La. 1992).
Considering these principles, we conclude that the trial court erred in assessing costs against the funds held in trust for Alicia, since no tutor was ever appointed. There was, thus, no legal basis to hold the minor's property liable for the fee.
Moreover, because the action was not instituted for the purpose of appointing a curator ad hoc and Alicia was not a "defendant" in the proceeding, the court did not err in failing to assess the costs against the adult children. Indeed, since the whole purpose of the action was to protect Alicia's interests during her minority, her siblings should not be penalized for their efforts on her behalf.
On the other hand, we find no error in the trial court's assessing the curator's fees and costs against Albert Huddleston. To begin with, this entire proceeding would have been *421 unnecessary, but for his actions in attempting to defraud Alicia and his other children. We have studied the opinions of three federal courts in the adversary proceeding filed by the Huddleston children in their father's bankruptcy proceedings.[1] We note that they made the following findings regarding Albert Huddleston's acts:
Albert Huddleston had himself named as administrator of the estate of Madeline Huddleston, his first wife and the mother of Alicia and her siblings, and he listed in the Sworn Descriptive List of her assets community property valued at $906,609.02, with the decedent's interest valued at $453,304.51. During his marriage to Madeline, however, Albert Huddleston had formed several corporations whose stock was community propertyUrban Redevelopments, Inc., Continental Titles, Inc., Chateau Golf and Country Club, Ltd, and Huddleston Properties, Inc. In January 1981, shortly before Madeline died, Albert Huddleston made an ostensible sale of the stock in these companies to his father in exchange for $500,000 in promissory notes. After Madeline died and after her succession was closed, that purported transaction was rescinded. Albert Huddleston testified in federal court that he had made the purported transfer to remove ownership of the companies from his marital community. Neither the stock nor the notes was listed on the Sworn Descriptive List prepared by Albert Huddleston for Madeline's succession, however. In later bankruptcy proceedings of two of those companies, Albert Huddleston listed himself as the owner of 100% of the stock. He admitted at the sentencing hearing in the criminal tax fraud proceeding against him that his actions with respect to the stock were taken to defraud and deprive his first wife of certain community assets. The Huddleston children (except for Alicia, who did not testify), testified that their father never informed them they were owners or part owners of any of the property they inherited from their mother. They were never informed that their father was using their money to support them and for their school and other expenses. They first learned of their ownership interests when they received notices of delinquent taxes from the Internal Revenue Service.
Although Albert Huddleston remarried two days after Madeline's succession was closed, he continued to manage the property that had been listed in the succession as if he were still usufructuary. He admitted in federal court that he knew his usufruct rights as surviving spouse had terminated upon his remarriage.
In the federal proceedings, Albert Huddleston was found to have committed breach of his usufructuary duty, breach of his fiduciary duty, and conversion. The federal courts found him liable to the children for damages accordingly. In addition, he was held liable to pay the interest and penalties assessed by the Internal Revenue Service on the unpaid estate taxes.
Essentially, the facts show that Huddleston willfully and intentionally exerted acts of dominion and control over property which was not rightfully his, but that of his children and prevented the children from exerting this control. He did this not only by possessing and using property that was not totally his, but also by failing to even inform the children that they owned any property over which they could have control and by fraudulently concealing from anyone the existence of the stock in Urban, CT and CG & CC as property of Madeline Huddleston's estate.
Matter of Huddleston, Delgiorno v. Huddleston, supra n. 1, Bankruptcy Court slip op. at 13-14. In addition, on appeal the federal Fifth Circuit noted,
Albert has concocted and asserted no less than eight bases of appeal to this court. As we find his arguments to be wholly without merit, and as the bankruptcy and district courts devoted more than enough time and space to the explanation of the resolutions of the issues, we decline to re-address them.... * * * Finding *422 these contentions frivolous, often disingenuous, and, at times, ridiculous, we decline to address any of them.
Delgiorno v. Huddleston, supra n. 1, 5th Cir. slip op. at 5 and n. 2.
"[T]he fact remains that in 1981 he took possession of the entire community and acted towards the children and the entire world as if the property was entirely his when in fact an undivided half interest in the property of the community (Madeline's entire estate) belonged to the children. He was a savvy lawyer and had to know better, yet he did not inform his own children of their legal rights or their property holdings. Moreover, as administrator of their mother's estate, usufructuary, and tutor-apparent of the estates of his minor children, it was his duty to do so. Neither did he deliver the property to his children as required when his usufruct terminated. By the time the children found out about their inheritance, much of its value had been dissipated and altered (several of the closely held companies that made up the estate had filed for bankruptcy) and was no longer available for delivery or partition. * * *"
Id. at 7-8.
Further, contrary to Albert Huddleston's contentions, he has acted in these proceedings as an adversary party to his adult children's attempts to protect Alicia's interests. We find that he is, in effect, the "losing party." We find no abuse of discretion in the trial court's assessments of the curator's fees and costs against Albert Huddleston.

Was Albert Huddleston's Liability Discharged by Bankruptcy?
Appellants also contend that the trial court was enjoined by the bankruptcy court from casting Huddleston in judgment for matters arising out of these proceedings and that the trial court erred in disregarding the injunction inherent in the bankruptcy court's September 18, 1990 notice of discharge. We find no merit to this argument because there is nothing in the record to indicate that the liabilities arising herein were among the debts scheduled and discharged in his bankruptcy proceeding. See: Johnson v. Fulwood, 398 So.2d 1151, 1154 (La.App. 4th Cir.1981).

Conflict of Interest by Albert Huddleston
We note, finally, that Albert Huddleston's representation of his daughter Alicia in this matter involves a fundamental conflict between his interest and hers. A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interests, unless the client consents after consultation. State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.7(b), La.R.S. foll. 37:219. The Louisiana State Bar Association's Rules of Professional Conduct have the force and effect of substantive law. Soderquist v. Kramer, 595 So.2d 825, 829 (La. App. 2 Cir.1992), citing City of Baton Rouge v. Stauffer Chemical, 500 So.2d 397 (La. 1987). In situations where the attorney's interest is adverse to that of his client, the attorney's duty requires him to disclose his adverse interest. Plaquemines Par. Com'n Council v. Delta Dev., 502 So.2d 1034, 1040-49 (La.1987). Albert Huddleston must make appropriate disclosure of the conflict of interests to Alicia and obtain her consent to his continued representation of her, as required by the Rules of Professional Conduct. We direct the trial court to ensure that Albert Huddleston establishes that he has complied with the Rules of Professional Conduct.

Decree
For the foregoing reasons, the judgment of the trial court is vacated and the matter is remanded for introduction of evidence regarding the fee and costs of the curator appointed to represent Alicia and for further proceedings in accordance with the views expressed herein.
VACATED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Matter of Huddleston, Delgiorno v. Huddleston, Bankruptcy No. 88-415B, Adversary No. 88-507B (U.S.Bankr.Ct., E.D.La., 7/26/90), aff'd in part, mod. in part, vacated in part, 1992 WL 32162 (E.D.La., 2/3/92) C.A. No. 90-3803, aff'd sub nom. Huddleston v. Delgiorno, slip op. No. 94-3287, 978 F.2d 711 (5th Cir.1992).