JaLOTTINGER, Chief Judge.
This is a suit to rescind the partition of community property on the grounds that the partition agreement was lesionary.
FACTS
Plaintiff, Margarette McCarroll, and defendant, Donald McCarroll were married on July 25, 1958. At all times during the mar *684 riage, and until Ms retirement on July 31, 1990, Mr. McCarroll worked for Chevron Corporation. On January 28, 1980, a judgment of divorce was entered in favor of Mrs. McCarroll based on the Supplemental and Amending Petition wMch she filed on September 12,1979. Shortly before Mr. McCar-roll retired in 1990, the parties entered into a commumty property settlement agreement. The agreement, dated March 3, 1990, provides, in pertinent part:
DONALD McCARROLL takes as his part, and MARGUERITE MARTIN McCARROLL does hereby transfer to DONALD. McCARROLL, all of her right, title and interest in and to:
1. A lot 218 feet on the North side of Highway 190 by a depth of 131 feet in Section 23, TownsMp 6 South, Range 6 East, being the property purchased from Holland heirs in COB 182, Page 332 of the Livingston Parish Clerk and Recorder’s Office.
2. Any and all movable property in the name of DONALD McCARROLL or in Ms possession that was acquired during the commumty of aquets and gains.
MARGUERITE MARTIN McCAR-ROLL further acknowledges that she has received the sum of $5,000.00 in cash.
MARGUERITE MARTIN McCAR-ROLL takes as her part, and DONALD McCARROLL does hereby transfer to MARGUERITE MARTIN McCARROLL, in addition to the $5,000 previously mentioned, all right, title and interest in and to
Any and all movable property in the name of MARGUIERITE MARTIN McCARROLL or in her possession.
The remaining property belonging to the parties shall be held in indivisión.
Upon his retirement, Mr. McCarroll received benefits from Chevron’s retirement and profit sharing plans. A dispute arose as to whether the benefits were partitioned in the ^foregoing settlement, and in June of 1992, Mrs. McCarroll filed a petition for partition of commumty property. Following Mr. McCarroll’s answer, Mrs. McCarroll filed an amended petition seeking to rescind, on the basis of lesion, the commumty property settlement agreement entered into on March 3, 1990. When the matter came to trial, the trial judge bifurcated the issues first hearing the issue of whether the settlement agreement included the retirement and profit sharing benefits. Following that portion of the trial, the trial judge, in his reasons for judgment stated that:
After a careful review of the testimony, the record, and the parole evidence presented in conjunction with the March 30, 1990, Commumty Property Settlement executed by both parties, the Court finds from the most credible evidence, that the parties intended to partition all commumty property, mcluding all movables, immov-ables, corporals, incorporáis, save and except oMy the commumty home. The parole evidence clearly established that the plaintiff, Margarette McCarroll, was to and did receive the exclusive use of and possession of the family home.
The trial judge then heard testimony on the second issue regarding recission of the property settlement on the basis of lesion. Following tMs portion of the trial, the trial judge concluded that the commumty was effectively terminated on November 16, 1976, that the fair rental value of the commumty home was $425.00 per month and the fair market value of the home was $52,500.00. The trial judge also concluded that the settlement was not lesionary, that Mrs. McCarroll was not entitled to reimbursement for maintenance of the commumty home, but that both parties were entitled to reimbursement for monthly house payments. Finally, the trial judge issued directives for the partition of the commumty home.
Mrs. McCarroll appealed raising eight assignments of error which can be summarized .as follows:
(1) Whether the trial judge erred in allowing parole evidence.
(2) Whether the Chevron benefits and the rental value of the home should have been considered as part of the commuMty property settlement agreement.
(3) When did the commumty property regime terminate.
*685 (4) Whether the trial judge erred in calculating the rental amount and in failing to allow Mrs. McCarrolTs reimbursement claims.
(5) Whether the trial judge erred in his lesion analysis.
14(6) Whether all community property should have been partitioned by the trial judge.
ISSUES ONE AND TWO
Mrs. McCarroll contends that the agreement was by authentic act and is therefore full proof between the parties. Thus, the trial judge erred in allowing parol evidence to vary the terms of the contract to include the Chevron benefits and the rental value of the family home.
The community property settlement agreement is in authentic form, having been executed before a notary public and two witnesses in conformity with La.Civ.Code art. 1833. Therefore, under La.Civ.Code art. 1835 the document is full proof of the agreement between the contracting parties. Courts are bound to give legal effect to such written contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. Oberfell v. Oberfell, 516 So.2d 424, 425 (La.App. 1st Cir.1987). The meaning and intent of the parties to a written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.Civ.Code art. 1848; Oberfell, 516 So.2d at 425. However, when the terms of a contract are susceptible to more than one meaning, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. Hebert v. Neyrey, 432 So.2d 396, 399 (La.App. 1st Cir.1983), modified, 445 So.2d 1165 (La.1984).
In the instant ease, the terms of the community property settlement agreement do not itemize the specific property to be partitioned. While the agreement divides “all movable property,” such a generic phrase should not be read to automatically include retirement and profit sharing benefits. Because of the uncertainty regarding the inclusion of these benefits, the trial judge properly admitted parol evidence to determine whether the parties intended to divide this asset.
Upon considering the parol evidence offered by both parties, the trial judge found that the parties intended to partition all the community property, including the retirement and profit sharing benefits, save and except the community home. The trial judge further found, that as additional consideration for the settlement, Mrs. McCarroll was granted exclusive use and | gpossession of the family home. These findings of fact were based on the trial judge’s determinations of witness credibility.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Weatherford v. Commercial Union Insurance, 94-1793, 94-1927, p. 5 (La. 2/20/95), 650 So.2d 763, 765-66; Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Weatherford, 650 So.2d at 766; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Ferrell v. Fireman’s Fund Insurance, 94-1252, p. 4 (La. 2/20/95), 650 So.2d 742, 745-46; Rosell, 549 So.2d at 844. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. Ferrell, 650 So.2d at 746; Rosell, 549 So.2d at 844. An appellate court may find manifest error or clear wrongness in a *686 finding purportedly based upon a credibility determination where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story. Ferrell, 650 So.2d at 746; Stobart, 617 So.2d at 882. This principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Weatherford, 650 So.2d at 766.
After reviewing the record in this case in its entirety, we cannot say. that the trial judge’s findings were manifestly erroneous. Mr. MeCarroll presented proof that the phrase “all movable property” was intended to include his retirement and profit sharing benefits. He and two witnesses stated that as far back as 1979, the parties had verbally agreed that Mr. MeCarroll would retain his benefits, and in exchange, Mrs. MeCarroll would have the exclusive use and possession of the family home. Mr. MeCarroll stated that the 1990 written agreement merely reflects the prior intent of the parties. While Mrs. MeCarroll acknowledged that she was given exclusive use and |6possession of the family home, she denied that she ever surrendered her rights to the retirement or profit sharing benefits. The trial judge found Mr. MeCarroll’s version more credible and concluded that by the written agreement, the parties intended to divide the benefits as per the prior verbal agreement'. Accordingly, Mr. MeCarroll retained the benefits and, as additional consideration, Mrs. MeCarroll received use and possession of the family home. We cannot say that the trial judge committed manifest error in choosing Mr. McCarroll’s version over Mrs. McCarroU’s.
In an alternative argument, Mrs. MeCarroll asserts that according to La.R.S. 9:374(C), she can not be charged/eredited with the rental value of the community home.
La.R.S. 9:374(C) provides:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provision of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
In Wochomurka v. Wochomurka, 552 So.2d 405, 406 (La.App. 1st Cir.1989), we interpreted this statute to mean that a spouse awarded the use and occupancy of the marital home pending partition of the community, shall not be hable for rent unless agreed to by the spouses at the time occupancy begins or unless ordered to pay by the court at the time the spouse is awarded occupancy.
When there is no evidence of court ordered rent or an agreement between the parties, the occupying spouse is not hable for rent. See McElwee v. McElwee, 93-1010 (La.App. 1st Cir. 8/17/94), 649 So.2d 975; Wochomurka, 552 So.2d 405; Roque v. Tate, 93-389 (La.App. 5th Cir. 2/9/94), 631 So.2d 1385, writ not considered, 94-0625 (La. 4/29/94), 637 So.2d 457; Herrell v. Herrell, 594 So.2d 943 (La.App. 3rd Cir.1992). In McElwee, 93-1010, 649 So.2d 975, we affirmed the trial court’s refusal to award back rental payments to a spouse where there was no evidence that the parties agreed to rental payments or that rental payments were ordered by the court. Similarly, in Wochomurka, 552 So.2d 405, there was no evidence that the parties agreed to or that the court ordered rental payments and therefore, such payments were not awarded even though the parties had agreed that Ms. Wochomurka would be allowed to remain in the family home.
|7The present case is distinguishable from McElwee and Wochomurka. In those cases, there was no evidence that the occupying spouse gave any consideration for the use and occupancy of the community home. Herein, the record reflects that at the time she began occupying the home, Mrs. McCar-roll verbally agreed that in exchange for the retirement and profit sharing benefits, she would receive exclusive use of the community home. We note that because La.R.S. 9:374(C) does not require that rental agreements between the spouses be in writing, a *687 verbal agreement can support a trial court’s award of rental payments. The record in this ease contains evidence of a verbal agreement between the parties wherein they contemplated an exchange of the benefits for the use of the community home. Accordingly, we find that the trial judge did not err in including rental payments as part of Mrs. MeCarroll’s consideration for the subsequent written community property partition agreement which divided the retirement and profit sharing benefits.
For the foregoing reasons, we affirm that portion of the trial judge’s decision holding that the community property agreement included Mr. MeCarroll’s retirement and profit sharing benefits. We also affirm the finding that as additional consideration, Mrs. McCar-roll received the exclusive use and possession of the family home.
ISSUE THREE
Mrs. MeCarroll also contends that the trial judge erred in concluding that the community property regime terminated on November 16,1976.
The record indicates that .the parties first filed a petition for legal separation on November 16, 1976, and that a legal separation was granted in 1977. The parties then reconciled but did not file a notarial act or execute a matrimonial agreement reestablishing the community property regime. They separated again and an amended petition for divorce was filed on September 12, 1979. A judgment of divorce was entered on January 28,1980.
At the time that the parties filed the first petition for legal separation, in 1976, La.Civ. Code art. 155 provided that the community regime was not reestablished upon reconciliation unless the parties executed and recorded a notarial act. Effective January 1, 1980, this article was amended to allow for the reestablishment of the community regime by matrimonial agreement. The article was again amended by Acts 1985, No. 525 § 1, effective September 6, 1985, to allow for automatic reestablishment of the community regime upon reconciliation of the parties. IgHowever, this amendment was not applied retroactively. See Conner v. Conner, 515 So.2d 468 (La.App. 1st Cir.1987).
In 1990, the legislature again changed the law in Acts 1990, No. 1009 § 7, effective January 1, 1991. The legislature enacted La.R.S. 9:384 which contained the same language as Article 155, recognizing the automatic reestablishment of the community upon reconciliation, but made the act retroactive for “[reconciled] spouses who were judicially separated by a judgment signed before January 1, 1991, or by a judgment rendered in an action governed by R.S. 9:381.”
Recently in Acts 1995, No. 1233 § 1, effective August 15, 1995, the legislature specifically limited the retroactive effect of La.R.S. 9:384 to reconciliation's occurring after September 6, 1985. This limitation coincides with the 1985 amendment to La.Civ.Code art. 155 which initially provided for automatic reinstatement of the community regime upon reconciliation of the parties. Thus, under this act community property regimes are automatically reestablished only when the parties reconciled after September 6,1985. The question here is whether this latest amendment applies retroactively to the present case.
As a general rule, appellate courts are bound to adjudge a case before it in accordance with the law existing at the time of its decision. Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714, 725, cert. denied, — U.S. -, 114 S.Ct. 2165, 128 L.Ed.2d 887. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal. Id. In determining whether laws may be applied retroactively, we are guided by La.Civ.Code art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Application of Article 6 requires that we first ascertain whether in the enactment, the legislature expressed its intent regarding the retrospective or prospective application *688 of the enactment. If such an intent is expressed, then the inquiry ends. If no such intent is expressed then the enactment must be classified as substantive, procedural or interpretive. Segura, 630 So.2d at 721.
The legislature’s power to enact retroactive laws is limited by the due process and contract clauses of both the United States and Louisiana Constitutions. U.S. Const, amend. XIV, § 19I; U.S. Const, art. I, § 10[1]; La. Const, art. I, § 2; La. Const, art. I, § 23. See Segura, 630 So.2d at 721 and 728. Thus, even when the legislature expresses its intent to give a substantive law retroactive effect, the law will not be applied retroactively if it impairs contractual obligations or disturbs vested rights. Segura, 630 So.2d at 721.
Section 2 of Act 1233 states that the act is remedial and shall be applied retroactively. Retroactive application in the present case does not impair any contractual obligation or disturb any vested rights of the parties. At all times prior to the final judgment of divorce on January 28, 1980, La.Civ.Code art. 165 required that to reestablish the community property regime, the parties had to either file a notarial act or execute a matrimonial agreement. Neither of these actions were taken by the McCarroll’s. Automatic reestablishment of the community was not instituted until approximately five years after the final divorce. Considering these facts, retroactive application of Act 1233 is permissible as it does not disturb any rights of the parties. Because the McCarroll’s reconciled prior to September 6, 1985, there is no automatic reestablishment of the community property regime.
For these reasons, we agree with the trial judge’s determination that the community property regime terminated on November 16,1976.
ISSUE FOUR
We next address Mrs. McCarroll’s arguments that the trial judge erred in calculating the fair rental value of the community home, in charging her for 190 months of rent and in denying her reimbursement. The trial judge concluded that Mrs. McCar-roll began occupying the community home in January of 1980. After finding that the fair rental value of the home was $425.00 per month, and reducing this amount by one-half, the trial judge concluded that over the 190 months of exclusive use, Mrs. McCarroll received a total of $40,375.00 in rental value.
We find no error in the trial judge’s conclusion that the fair rental value of the home was $425.00 per month. This determination was based on the expert testimony offered at trial.
Furthermore, we find no error in charging Mrs. McCarroll for 190 months of rent. Mrs. McCarroll contends that she can only be charged for use of the community home up to the date that the parties entered into the community property agreement, that would be 121 months.
IiqAs a general rule, the proper way to determine lesion is to first determine the partitioned property’s true value as of the date of the contract and to then determine whether a party received three-fourths of his share. Oberfell, 516 So.2d at 426; Bedwell v. Bedwell, 399 So.2d 685, 686 (La.App. 1st Cir.1981). However, we note that in this case, the agreement between the parties contemplated ALL future use of the community home by Mrs. McCarroll. The trial judge properly considered rental payments beyond the date of the partition, as such payments were contemplated by the parties at the time of contracting. As of the date on which the trial judge issued his reasons for judgment, Mrs. McCarroll had occupied the home for 182 months. The inclusion of eight additional months was reasonable considering the time limitations for partitioning of the community home.
Finally, we address the trial judge’s denial of Mrs. McCarroll’s reimbursemenVoffset claim. First, we find that the trial judge properly refused Mrs. McCarroll’s claim for the rental value of the Albany property.[1] *689 While there was expert testimony on the rental value of the property, there was insufficient testimony regarding the number of months that the property was actually rented. We also find that the trial judge properly refused Mrs. McCarroll’s claim for the rental value of the community home for Mr. MeCarroll’s use from July of 1978 to January of 1980. There was no evidence of court ordered rental payments or of any agreement between the parties for such rent. ■
However, we do find that the trial judge erred in denying Mrs. McCarroll reimbursement for expenses for maintenance of the family home. The trial judge erred in using La.Civ.Code art. 806 to deny this reimbursement claim. Article 806 does not contemplate a situation such as the present one where a co-owner is granted use of the co-owned property in exchange for other consideration. In determining whether Mrs. McCarroll was entitled to reimbursement, the trial judge should have considered La. Civ.Code art. 2366 and the applicable jurisprudence.
Pursuant to article 2365, Mrs. McCarroll is entitled to one-half the amount of her separate property used to satisfy the insurance payments for the family home. See Williams v. Williams, 590 So.2d 649, 655 (La.App. 3rd Cir.1991). She is also entitled to reimbursement for expenses of maintenance and improvements proven to be both necessary and an enhancement to the value of the property. Jones v. Jones, 605 So.2d 689, 693 (La.App. 2nd Cir.), writ denied, 607 So.2d 571 (La.1992); Michel v. Michel, 484 So.2d 829, 831 (La.App. 1st Cir.1986); Lentz v. Lentz, 411 So.2d 59, 61-62 (La.App. 4th Cir.1981). Considering this burden, we find that Mrs. McCarroll is entitled to one-half of the amount of her separate property used for the following: (1) new roof; (2) new cook top and oven; and (3) new air conditioning and heating unit.[2] To receive her reimbursement, we order that Mrs. McCarroll receive the sum of $5247.50 when the community home is partitioned.
ISSUE FIVE
Mrs. McCarroll has also alleged that the trial judge erred in his lesion analysis, and therefore, erred in concluding that the partition agreement was not lesionary.
The record establishes the following values for the partitioned community property:
1. Albany property — one-half owned by the McCarroll’s 30,000
2. Chevron retirement 42,437
3. Chevron profit sharing 42,972
4. Movables in Mrs. McCarrofl’s possession 2,000
5. $5,000 cash 5,000
Total Community Property Contained in Partition 122,409
If Mrs. McCarroll did not receive three-fourths of her one-half of the divided community property, the partition agreement is le-sionary. La.Civ.Code art. 814. One-half of the divided community property is $61,-205.00. Three-fourths of this amount is $45,-903.00. Mrs. McCarroll received $7,000.00 in cash and movables. As additional consideration for the agreement, she received exclusive use of the family home for 190 months. If the fair rental value of $425.00 per month is reduced by one-half[3], Mrs. McCarroll received, as additional | ^consideration, $40,-375.00 in rental value.[4] In total, Mrs. McCarroll received $47,375.00, which is over the three-fourths lesionary figure.
Accordingly, we find no error in the trial judge’s conclusion that the partition agreement was not lesionary.
*690 ISSUE SIX
The final issue raised by Mrs. McCarroll is whether the trial judge erred in failing to partition all of the community property.
In light of our forgoing conclusions regarding the community property agreement we find no error in the trial judge’s conclusion that the family home was the only property remaining to be partitioned.
CONCLUSION
For the foregoing reasons we reverse that portion of the judgment of the trial court dated March 13, 1995, denying Mrs. McCar-roll reimbursement for expenses for maintenance of the property held in indivisión and award Mrs. McCarroll reimbursement in the amount of $5247.50 to be paid at the time of partitioning the community home.
In all other respects, the judgment appealed from is affirmed. Costs of this appeal are to be divided equally between Mr. McCarroll and Mrs. McCarroll.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
FITZSIMMONS, J., Concurs & Assigns Reasons.
GONZALES, J., concurs.

. The McCarroll’s owned a one-half interest in certain commercial property in Albany. Mrs. McCarroll sought to recover a portion of the rent which she alleged was collected by Mr. McCar-roll.

. The record reflects that Mrs. McCarroll spent the following sums: insurance $5749.50; roofing supplies and labor $1736.92; cook top and oven $1048.58; and air conditioner $1960.00.

. Because the agreement is not lesionary regardless of whether Mrs. McCarroll is credited for all or one-half of the rental value, we do not address the issue of which value must be considered in the analysis.

.This analysis, which was also employed by the trial judge, properly omits the rental value from the agreement as a divided community asset. It is the community home itself and not the home’s rental value which is a community asset. The home was the only asset which was not divided in the settlement agreement.