710 So.2d 327 (1998)
Helen A. ABADIE
v.
Daniel J. MARKEY, Jr., et al.
No. 97-CA-684.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1998.
Rehearing Denied April 17, 1998.
*328 Elsie B. Halford, Metairie, for Appellant Helen A. Abadie.
Daniel J. Markey, Jr., New Orleans, G. Patrick Hand, Jr., Gretna, Charles L. Augustine, Appellants in proper person.
Before GAUDIN, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Helen Abadie, appeals from a judgment dismissing her suit for delinquent rental payments, taxes and attorney fees against the sureties to a lease, defendants, Daniel J. Markey, Jr. (Markey), G. Patrick Hand, Jr. (Hand), and Charles Augustine, Sr. (Augustine). We affirm in part, reverse in part and render an award. We affirm the dismissal of the third-party actions.
Plaintiff owned a piece of property in New Orleans, Louisiana which was used as a gas station and convenience store. Three leases were executed in relation to this property in 1984, 1986 and 1989 with U-Cut Corners, Inc. (U-Cut). The company was owned and managed by Augustine. The three defendants *329 signed the leases as sureties. The last lease, for five years, was executed in June of 1989, along with a promissory note for $5,000. The note was executed because U-Cut was delinquent in the rent. Under the note, the company was obligated to pay $1000 monthly, until the $5,000 was paid.
In December of 1989, pursuant to an Authorization to Sub-Lease given by plaintiff, a sub-lease was executed by U-Cut Corners, Inc. and Equipco, incorporating the terms and conditions of the original lease. Because the parties knew that one of the underground gas tanks was leaking, the authorization to sub-lease included a provision requiring Augustine to obtain a performance bond for the work that would be needed to correct the leak. No performance bond was ever obtained. Subsequently, Equipco became delinquent in rental payments and taxes. Thus, in February of 1993, plaintiff filed a Rule to Evict Equipco in First City Court in New Orleans. Equipco filed for bankruptcy before the eviction could be carried out and the eviction was stayed by the Bankruptcy Court.
On May 3, 1993, plaintiff also filed an ordinary suit on the contract of lease and the promissory note against defendants as sureties, for unpaid rentals, for taxes owed by the lessee but paid by plaintiff, for principal and interest on the promissory note and for attorneys fees. The petition claimed breach of lease and default of the promissory note.
In October of 1993, the bankruptcy stay was lifted. By this time, Augustine was trying to find a buyer for the property. Augustine subsequently found a potential buyer, Quality Machinery, Inc. (Quality) and the President of the company, Robert Lucien and Warren Abadie (Abadie), who had been managing the property for his mother, plaintiff, for several years, began negotiations. However, the banks that were contacted refused to finance the sale because the tank problem had not been resolved. As a result, Augustine hired Ranger Environmental (Ranger) to remove the tanks. Augustine did not have tanks reinstalled because of the expense. However, he hired labor and equipment to fill the holes and to clean the property after the removal, so that the property could be sold. Quality paid Ranger $13,000 for the removal work. Eventually, a price of $119,000 was agreed upon by Quality and Abadie. In addition, in order to go forward with the sale, plaintiff agreed to reimburse Quality $13,000 which it had paid for the removal of the tanks. This was subtracted from the sale price.
Defendants, Markey and Hand, filed answers to plaintiff's petition asserting failure of consideration and modification of the lease, as affirmative defenses to plaintiff's claims. They next filed a third-party demand against Augustine, alleging a hold harmless and indemnity agreement. Augustine filed an answer to plaintiff's petition, generally denying the allegations and asserting extinguishment of the debt by acquiescence of plaintiff or plaintiff's agent to the sub-lease and extinguishment by payment of cash and services agreed to by Abadie, plaintiff's agent. He alternatively pled unjust enrichment and prayed for reduction of the claim by the value of the services, which he claimed were for the benefit of the property. In his third-party claim, Augustine asserts that Abadie agreed to let Augustine perform services to the property by removing the derelict tanks, in exchange for extinguishment of the debts. He also contends that he paid money in satisfaction of plaintiff's claim. Augustine also asked for damages against Abadie, alleging that Abadie was not a bona fide agent of plaintiff and that he fraudulently or negligently promised to forgive the debt in exchange for the repairs to the property.
A trial was held on September 11, November 21, 1995 and September 12, 1996. The trial judge rendered a judgment on January 31, 1997 dismissing all the claims. He found that plaintiff failed to prove her case by a preponderance of the evidence.
On appeal, plaintiff asserts that the trial judge erred in finding that she failed to prove her case by a preponderance of the evidence and that the trial judge erred in admitting evidence in support of an affirmative defense that was not specifically pled by defendants prior to trial. She further contends that the sureties were not released by modification, failure of consideration or agreement.

*330 PREPONDERANCE OF THE EVIDENCE
Plaintiff first claims that she clearly proved by testimony and documentary evidence that the lease was breached by Equipco's failure to pay rentals and taxes owed under the lease. She contends that defendants did not contest the amounts of her claim for either the lease rentals or the amount due on the promissory note. Thus, she asserts, she is entitled to the rentals, taxes and amounts due on the promissory note. We agree.
The leases were introduced into evidence. Abadie testified about the amounts due for the delinquent rentals, taxes and promissory note. Defendants did not contest the amounts claimed or that they were owed under the lease and promissory note. Thus, we find that plaintiff proved her case by a preponderance of the evidence. The question is whether the obligations were extinguished or forgiven by Abadie.
In her second argument, plaintiff contends that the sureties were not released from their obligations through either modification of the lease or failure of consideration.
The trial judge determined that plaintiff failed to prove her case for the debts, which we have already determined was error. He did not make a finding on the extinguishment question, which was pled by defendants. It is their burden to prove their defenses. Since this was not addressed by the trial judge, we must address the extinguishment issue de novo.
A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. La. C.C. art.1906. It is the law between the parties and is full proof of the agreement. C.C. art. 1835; McCarroll v. McCarroll, 95-1972 (La.App. 1 Cir. 6/28/96); 680 So.2d 681, 685.
Courts are bound to give legal effect to written contracts according to the true intent of the parties. La.C.C. art.2045. This intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. Ochsner Clinic v. Maxicare Louisiana, Inc., 95-959 (La.App. 5 Cir. 3/26/96); 672 So.2d 979, 981. "The meaning and intent of the parties to a written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence." McCarroll v. McCarroll, 680 So.2d at 685; Ochsner Clinic v. Maxicare Louisiana, Inc., 672 So.2d at 982; C.C. art. 1848. However, when the terms of a contract are susceptible to more than one meaning, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. McCarroll v. McCarroll, 680 So.2d at 685.
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. art. 3035. The surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert, except lack of capacity or discharge in bankruptcy of the principal obligor. C.C. art. 3046. The obligations of a surety are extinguished by the different ways in which conventional obligations are extinguished and, further, by extinguishment of the principal obligation, prescription and termination of the suretyship. C.C. art. 3058, 3059. Modification of the principal obligation without the consent of the surety also extinguishes the surety's obligation. C.C. art. 3062.

EXTINGUISHMENT BY MODIFICATION
Plaintiff argues that the sureties were not released due to modification because the sub-lease was not a modification of the lease and/or because, in the suretyship agreement, the sureties waived their right to release due to modification. Plaintiff argues that the sureties waived release due to modification of the lease specifically in the suretyship agreement. Alternatively, she contends that the sub-lease was not a modification because paragraph 11 of the lease permits the lessee, U-Cut, to sublet with the written permission of the lessor. She contends that all defendants consented by initialing this page, which does not stipulate that the sureties consent must be obtained.
The suretyship agreement states:

*331 SURETY: And now comes Charles L. Augustine, Daniel J. Markey, Jr. and G. Patrick Hand, Jr., WHO ARE MADE A PARTY to this contract of lease and is bound with Lessee IN SOLIDO for the faithful execution of all the obligations to be performed on the part of the Lessee, and furthermore waives all rights to release from this obligation due to ... any modification of this lease ...
Under this provision of the lease, the sureties waived their rights to release due to modification. The waiver language is clear and unambiguous. In addition, the lease provides in paragraph 11 that the lessee may sub-let the premises with the consent of lessor. It does not require the consent of the sureties. The sureties initialed this page and, thus, agreed to this provision. For these reasons, we find that the sureties were not released by modification of the lease.

EXTINGUISHMENT BY FAILURE OF CONSIDERATION
Next, plaintiff argues that defendants are not released from their obligation by failure of consideration. In this respect, defendants assert that plaintiff was responsible under the lease for the underground storage tanks which were defective. Since the tanks were defective, it was impossible for the lessee to operate as a gas station, which was the reason for the lease.
Plaintiff contends that the lessee accepted the premises in its then-present condition when the lease was executed in 1989 and further obligated itself in the lease to maintain the tanks. Furthermore, plaintiff argues that Augustine had been operating the gas station on these premises for five years before the June 15, 1989 lease was signed, and, according to his testimony, had knowledge of the leaks before June of 1989.
Paragraph 5 of the lease states:
Lessee hereby accepts the premises in their existing condition and assumes responsibility for the condition of the leased premises. Any improvements or alterations desired by Lessee shall be at the Lessee's cost ...
Paragraph 17 of the lease provides in part:
Lessee will at Lessee's sole expense keep and maintain in good repair the entire leased premises, including without limitation... all underground gasoline storage tanks and related equipment ...
We agree with defendants that Paragraph 17 of the lease does not contemplate that the lessee would be responsible for leaking tanks that would have to be removed. It contemplates ordinary maintenance and repairs. However, Augustine testified that he became aware of the leak when Exxon refused to supply gas due to the leak in one of the tanks. He said this occurred "... prior to 1989 or maybe in the beginning of 1989." He stated that the issue arose when Exxon received complaints about water in the gasoline. In addition, he testified that the "State" complained to him that the leaking tanks created an environmental hazard. He did not produce the letters supporting this allegation. Plaintiff introduced letters showing that Exxon threatened to stop supplying him because he failed to buy the required amount of gas in October and November of 1988 and because he failed to operate as a retail automotive service station for a period in excess of seven days from August of 1989 to September of 1989. However, Augustine claimed that he was unable to do so because of the tank problems.
The evidence showed that Augustine, the representative of U-Cut, and later Equipco, knew about the tank problems when he executed the 1989 lease and sub-lease. Since he knew, and further since the lease provided that the premises were accepted as is (Paragraph 5), we find that there is no failure of consideration on the basis of the defective tanks.

EXTINGUISHMENT BY AGREEMENT
Plaintiff first argues that this defense was not properly pled. Plaintiff contends that defendants failed to assert the facts upon which the extinguishment was based in their pleadings and that she objected throughout the trial to admission of this evidence. She asserts that the trial judge improperly placed the burden on plaintiff of knowing the facts relative to this defense through the use of discovery.
*332 The pleadings show that Markey and Hand pled modification and failure of consideration in answer to plaintiff's petition. Augustine, in proper person, pled extinguishment because plaintiff or her agent agreed to the sub-lease and, that the obligations were extinguished by payment of cash and services. He asserted that, alternatively, plaintiff is entitled to a reduction of the debt equal to the costs of the services, which constitutes improvements to the property. No further facts were pled in the answer to the original petition filed by plaintiff. Augustine's third-party claim against Abadie was included with his answer. In that third-party petition, Augustine asserted that Abadie agreed to permit Augustine to perform services to the property, which included removal of the derelict tanks, in exchange for extinguishment of the debts. Augustine further asserted that he paid money in satisfaction of plaintiff's claim.
Affirmative defenses are provided for in La. C.C.P. art. 1005, which states:
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense....
The affirmative defenses listed in C.C.P. art 1005 are illustrative and not exclusive. Salter v. State Through Dept. of Health and Human Resources, 612 So.2d 163, 166 (La. App. 1 Cir.1992); Webster v. Rushing, 316 So.2d 111 (La., 1975); Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir., 1979).
An "affirmative defense" is one which will have the effect of defeating the suit on the merits. Salter v. State Through Dept. of Health and Human Resources, 612 So.2d at 166. Such a defense must be specially pled in the answer. Id. The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that the plaintiff is not surprised. Id. The party pleading an affirmative defense has the burden of proving it by a preponderance of the evidence. Reily Elec. Supply, Inc. v. Hollenberg, 535 So.2d 1321, 1323 (La.App. 5 Cir.1988).
Art. 1003 provides for the form of an answer to a petition, as follows:
The answer shall comply with Articles 853, 854, and 863 and, whenever applicable, with Articles 855 through 861. It shall admit or deny the allegations of the petition as required by Article 1004, state in short and concise terms the material facts upon which the defenses to the action asserted are based, and shall set forth all affirmative defenses as required by Article 1005. It shall also contain a prayer for the relief sought. Relief may be prayed for in the alternative. [Emphasis added]
In this case, Augustine pled extinguishment by way of payment and services. This was sufficient to put plaintiff on notice of the defense. Had he solely pled "extinguishment" without adding that it was extinguished due to "services" and "payment", then the pleading would not have been sufficient to permit him to produce evidence of his conduct in removing the defective tanks, cleaning up the property and finding a buyer for plaintiff. Thus, we find that the trial judge did not err in admitting the evidence.
Finally, plaintiff asserts that the trial judge was manifestly erroneous in failing to find that there was no agreement to release the debts in exchange for Augustine's services. She further argues that if an agreement existed, it is ineffective because it was an attempt at "transaction or compromise", which must be in writing or recited in open court to be enforceable.
The record reflects that there was no evidence of any cash payment made by Equipco or Augustine that would have extinguished the debts plaintiff claimed at trial. However, Augustine contended that he found a buyer for the property and removed the storage tanks at a cost to him of $12,000 to $15,000 in labor and materials in order to facilitate the sale. He testified that the property was not worth much without removal of the tanks because of the environmental issues involved. The evidence further shows *333 that there were attempts by Equipco, through Augustine, to purchase the property in 1991 and 1992. Augustine stated that the banks that he approached turned down the financing because of the leaking tanks. However, it was also apparent that Equipco was not paying its lease obligations during that time and was not financially sound.
Abadie represented plaintiff at all times and was given power of attorney to act for her in the lawsuit. He testified that there was no agreement to extinguish the debts which Equipco owed in return for Augustine's services in any regard. In his opinion, the problem with the tanks was Augustine's responsibility under the lease. He testified that Augustine had the tanks removed without informing him and did not get a performance bond as he was supposed to under the Authorization to Sub-Lease. Abadie testified that he did not know during the negotiations that Augustine was an officer of Quality, but found out later at the Act of Sale. The reason that plaintiff rebated $13,000 back to Quality at the Act of Sale was to make sure that the sale went through. He said that he and plaintiff were tired of the problems with the property and wanted it sold.
Robert Merlino (Merlino) testified that he was present at several meetings between Abadie and Augustine. Merlino stated that they discussed the tank problems and the debts owed by Quality. Merlino said that it was his understanding from these discussions that Augustine's services in removing the tanks and finding a buyer would extinguish the debts owed to plaintiff by Quality and Augustine.
Plaintiff testified that there was no agreement, but Augustine testified that there was an agreement to extinguish the debts. Merlino thought that the discussions regarding the problems with the tanks began around 1990 because of upcoming federal regulations related to environmental factors which would affect the gas station. He "understood" that the discussions resulted "in the end" with an agreement to release the debt in a future sale. However, there is no other evidence as to when the parties entered into the "agreement", if it existed.
Art. 3071. Transaction or compromise, definition
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
If the parties made the agreement after the legal proceedings commenced or in anticipation of litigation, plaintiff correctly notes that it is an offer of transaction or compromise, which must be in writing or recited in open court to be effective. C.C. art. 3071, supra. In this case, the record shows that Augustine stopped paying rents in January of 1993 and that the eviction suit was filed in February of 1993. The petition herein was filed in May of 1993. Prior to the legal proceedings in 1993, Equipco was trying to buy the property. However, this alone is not proof that the agreement, if it existed, was made before the legal proceedings were instituted or that it was not agreed upon to prevent a lawsuit. Thus, even if there was an agreement, we find that it was a transaction or compromise and had to be in writing or recited in open court to be enforceable. Thus, we further find that defendants failed to prove extinguishment by agreement.
Since defendants failed to prove that the obligations under the surety agreement were extinguished in any manner, we find that the trial judge erred in dismissing plaintiff's suit for rentals, taxes and attorney's fees.

ATTORNEY'S FEES
Under the lease, the lessee is obligated for reasonable attorney's fees, costs and expenses incurred by the lessor in an action to enforce the lease or to collect money owed under its' provisions. Plaintiff initially requested $5,200 in attorney's fees.
Attorney fees are subject to review and control by the courts. Courts may inquire into the reasonableness of attorney's fees as part of their prevailing inherent authority to regulate the practice of law. In re Tutorship of the Property of Alicia St. John *334 Huddleston, 95-97 (La.App. 5 Cir. 4/25/95); 655 So.2d 416, 419.
The factors to be considered in determining the reasonableness of attorney's fees are:
(1) the ultimate result obtained. (2) the responsibility incurred. (3) the importance of the litigation. (4) the amount of money involved. (5) the extent and character of the work performed. (6) the legal knowledge, attainment, and skill of the attorneys. (7) the number of appearances involved. (8) the intricacies of the facts involved. (9) the diligence and skill of counsel. and (10) the court's own knowledge.
Rivet v. State, DOTD, 680 So.2d 1154, 1161-1162 (La.1996); In re Tutorship of the Property of Alicia St. John Huddleston, 655 So.2d at 419. Considering the factors set forth in Rivet, we find that $5,000 is a reasonable attorney's fee in this case.

SET-OFF
The trial judge did not reach the defense of set-off, pled in Augustine's answer, and we must address that issue. Augustine asserted at trial that he spent $12,000 to $15,000 to assist in the removal and clean-up work resulting from the removal of the tanks. He testified that this amount was for labor and equipment to fill in the hole, to vacuum some of the fluid and to perform miscellaneous clean-up jobs. He produced no documentation, explaining that he thought it would not be needed because of the agreement with Abadie. We find his testimony sufficient to award him $12,000 as a set-off or credit to his obligations as one of the sureties.
Accordingly, we reverse the judgment of the trial court as to defendants' liability as sureties under the lease agreement for overdue rental payments, unpaid taxes, expenses and attorney's fees. Judgment is hereby rendered in favor of plaintiff and against Hand, Markey and Augustine, in solido, in the sum of $35,889.95[1], plus attorneys' fees in the amount of $5,000, with legal interest from date of judicial demand. The judgment of the trial court is affirmed in all other respects. Costs of the trial and appeal are to be paid by defendants.
AFFIRMED IN PART; REVERSED IN PART; AWARD RENDERED.
NOTES
[1] In brief, plaintiff cites the figure as $35,522.99. Our calculations totaled $35,889.95.