990 So.2d 26 (2008)
Samuel BANKS, Ernest Blancher, Pearlin Brent, Walter Collins, Arthur Domingue, Emily Bergeron, Valcour Dominic, Sr., David Fairman, Jonnie Gibson, Wilbert Hampton, Blanche Jenkins, Ernest Lagrange, Jr., Richard Mack, Sr., James Pierre, Sr., Laura Robertson, Audrey Sanders, Johnny Scott, Audury Sharper, Dennis Sharper, Alfred Taylor, Sr., Clara Taylor, Virginia Thompson, Sarah Veal, Percy Videau and Archie Wilson
v.
PARISH OF JEFFERSON and B & K Construction Company, Inc.
No. 2008-CA-27.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2008.
Elizabeth M. Gaudin, Hilary G. Gaudin, Attorneys at Law, Gretna, LA and Bruce C. Dean, Attorney at Law, Metairie, LA, for Plaintiff/Appellant.
Thomas P. Anzelmo, Sr., Roy C. Beard, Kyle P. Kirsch, Eugene T. Rhee, Attorneys at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiffs filed this lawsuit against the Parish of Jefferson and B & K Construction Company, Inc. alleging damages to their homes in connection with the construction of the Gardere Canal. The Parish of Jefferson filed a Motion for Summary Judgment claiming immunity pursuant to La.R.S. 29:735, the Louisiana Emergency Assistance and Disaster Act.[1] *27 The motion was granted by the trial court, and appellants filed the instant appeal. We reverse and remand for proceedings consistent with this decision.

Factual Background:
Plaintiffs filed this lawsuit on February 28, 2000 against the Parish of Jefferson and B & K Construction Company, Inc. alleging that the Parish is liable for damages which occurred to Plaintiffs' homes in Harvey, Louisiana. The plaintiffs allege that during 1998 and 1999, the defendants undertook construction work on the Gardere Canal in Harvey, Louisiana which is in close proximity to their homes and that "substantial damage was done to plaintiff's homes including a pulling away of walls, numerous cracks in the homes, and damages to pools and garages". Plaintiffs have specifically alleged that the Parish was grossly negligent in the following:
1. Causing vibrations, soil subsidence, improper weight bearing and placement of heavy equipment and removal of sheet pilings;
2. Failing to take proper and necessary safe guards to insure that plaintiff's houses would not be damaged by the construction work undertaken in the Gardere Canal;
3. Failing to properly inspect and test whether plaintiffs' houses could withstand the construction work being undertaken by the defendants without serious and irreparable damages;
4. In other respects that will be shown at the trial on this matter.
On January 16, 1997, the Parish of Jefferson and the United States Department of the Army entered into a Project Cooperation Agreement, for the construction of the Southeast Louisiana Project (SELA) in Jefferson, Orleans, and St. Tammany Parishes. Part of this project included construction of the Gardere Canal. In its Material Facts not Genuinely Disputed, filed with its Motion for Summary Judgment the Parish stated that the Gardere Canal is a drainage system which was one of multiple projects collectively referred to as the Southeast Louisiana Flood Control Project ("SELA"). SELA was congressionally authorized pursuant to the Energy and Water Development Appropriations Act of 1996 and the Water Resources and Development Act of 1996 and the various projects were constructed in cooperation with the local parishes. The primary purpose of the Gardere Project was urban flood control improvement. Pursuant to the Flood Control Act of 1970, and by agreement, dated January 16, 1997, between Jefferson Parish and the U.S. Army Corps of Engineers, the United States provided 75% of the Gardere Project's costs. The final plans and specifications for the Gardere Project were prepared, reviewed and accepted in accordance with the standards of the U.S. Army Corps of Engineers.
In support of its Motion for Summary Judgment Jefferson Parish filed in the trial court the Declaration of Elizabeth Cottone, dated November 27, 2000 and the Project Cooperation Agreement, dated January 16, 1997. In her Declaration Ms. Cottone attested that she was the U.S. Army Corps of Engineers senior project manager during the construction of the *28 Gardere Canal. She attested that the SELA project consists of the planning, design and construction of various flood prevention, flood reduction, and water quality improvement projects in Jefferson, Orleans, and St. Tammany Parishes. She stated that these projects are authorized by Congress, and are being constructed to prevent and/or reduce floods that can occur due to rain water run off and to improve the quality of water that will discharge into various lakes and water basins in the area such as Lake Pontchartrain. In her Declaration Elizabeth Cottone referred to a report prepared by the Corps of Engineers as a basis for the Congressional enactment of the SELA legislation, "Jefferson and Orleans Parishes, Louisiana, Urban Flood Control and Water Quality Management, July 1992" (the reconnaissance report). She attested that Congress authorized the SELA projects in Section 533 of the Water Resources Development Act of 1996 and Section 108 of the Energy and Water Development Appropriations Act of 1996. Ms. Cottone attested that the SELA projects were authorized based upon only the reconnaissance report, and an agreement about the local share of the project funding. She attested that this was an unusual step taken because of the urgency placed upon the immediate construction of the SELA projects. Ms. Cottone attested that, while the reconnaissance report addressed both flood control improvements and storm water quality improvement, the authorized SELA legislation addressed only urban flood control improvements. Ms. Cottone listed the planning objectives for the Jefferson and Orleans Parishes projects as follows:
a) Reduce rainfall-flooding damages in Jefferson and Orleans Parishes.
b) Develop management plans to improve the water quality of storm water runoff, in order to restore the receiving water bodies to their designated uses (ie., making them fishable and swimmable as applicable).
c) Minimize adverse environmental impacts associated with the proposed plans of improvements.
d) Minimize to the extent possible the destruction of archaeological and historical resources.
e) Incorporate to the extent possible recreation facilities in the proposed improvement plans to increase recreation opportunities.
f) Mitigate for all unavoidable impacts to significant cultural, and fish and wildlife resources.
Jefferson Parish also introduced into the record in connection with the motion the Project Cooperation Agreement between the Department of The Army and Jefferson Parish. This agreement defined the term "Project" as:
... the provision of canal improvements, removal of canal obstructions, and increased pumping capacities in Jefferson Parish on both the East and West Banks of the Mississippi River in the vicinity of New Orleans, Louisiana as generally described in the Jefferson and Orleans Parishes, Louisiana, Urban Flood Control and Water Quality Management Report, dated July 1992, and the Technical Reports prepared by the U.S. Army Engineer District, New Orleans, entitled "Southeast Louisiana Project, Jefferson, Orleans and St. Tammany Parishes, La.", dated 9 April, 1996 and "Southeast Louisiana Project, Jefferson Parish dated 3 June 1996, and approved by the Chief of Engineers on 4 October 1996....
In its opposition to the Motion for Summary Judgment the plaintiffs did not dispute the facts presented by Jefferson Parish.
*29 There was no evidence presented that the Gardere Canal construction work was performed to address or prepare for any specific emergency or disaster.

Procedural History:
On February 28, 2000, Plaintiffs filed their petition for damages, naming two defendants: the Parish and B & K Construction Company. On August 17, 2000, B & K Construction company filed a third party complaint against the United States alleging that it was entitled to indemnification by the United States Corps of Engineers for any damages. On October 10, 2000, in response to B & K's third-party demand, the Corps removed the case to federal court. The federal court granted the Corps' motion to dismiss B & K's third party demand and remanded the case back to the 24th Judicial District Court on September 14, 2001. On February 24, 2007 in an amended answer, the Parish raised an affirmative defense, claiming immunity from liability under La.R.S. 29:735. The Parish then filed a Motion for Summary Judgment on May 4, 2007, based on La. R.S. 29:735.[2] On September 11, 2007, the Parish's motion for summary judgment was granted. From this judgment, Plaintiff was granted the instant appeal.

Standard of Review:
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Vermilion Corporation v. Vaughn, 397 So.2d 490, 493 (La.1981). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaney for Use and Benefit of Chaney v. National R.R., 583 So.2d 926, 930 (La.App. 1 Cir.1991); Elliott v. Continental Cas. Co., XXXX-XXXX (La.2007), 949 So.2d 1247, 1253.
It is well settled that appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512 (La. 1994), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327 (La.App. 5 Cir. 04/25/00), 761 So.2d 84, writ denied, 00-1453 (La.2000), 766 So.2d 544; Moody v. United Nat. Ins. Co., 98-287 (La.App. 5 Cir. 9/29/98), 743 So.2d 680; Ferro v. Blasini, 05-376 (La. App. 5 Cir. 1/17/06), 922 So.2d 613.

Assignments of Errors:
Appellant presents three assignments of error:
1. The trial court improperly granted summary judgment because the Parish of Jefferson failed to carry its burden of proving its affirmative defense of immunity under the "Louisiana Homeland Security and Emergency Assistance and Disaster Act," LSA-R.S. art. 29:735
2. The trial court improperly granted summary judgment because the Parish failed to prove that plaintiffs' damages were the result of "homeland security" or "emergency preparedness activities," within the meaning of LSA-R.S. art. 29:735
3. The trial court improperly granted summary judgment because the Parish failed to meet its initial burden of rebutting Plaintiff's allegation that their damages *30 were caused by gross negligence of its employees.

Analysis:
With regard to assignments of error one and two, the appellant argues that in order for La.R.S. 29:735 to apply in this case the Parish must prove that the public actions which caused the damages in question were performed in connection with a specific or declared state of emergency and failed to do so, and that the parish failed to prove that plaintiffs' damages were caused by the parish's "emergency preparedness activity." It is Jefferson Parish's position that there is no temporal requirement in the Louisiana Emergency Assistance and Disaster Act, that the act provides the government with immunity for any actions taken to curtail damages from natural disasters, even with no impending emergency. Because our analysis of this case turns on the breadth of the "emergency preparedness immunity", we will address these two assignments of error together.
As amended in 1993 and effective during the relevant period La.R.S. 29:735(A) provided for a qualified immunity for certain "emergency preparedness activities":
A.(1) Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees or representatives of any of them engaged in any emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.
The Parish's immunity defense pursuant to La.R.S. 29:735 is an affirmative defense. Rogers v. State ex rel. Dept. of Public Safety & Corrections, XXXX-XXXX (La.App. 3 Cir. 1/30/08), 974 So.2d 919. Although the plaintiff bears the burden of proving liability at trial, the Parish has the burden of proving entitlement to its affirmative defenses, including its immunity defenses. Monteville v. Terrebonne Parish Consolidated Gov't, 567 So.2d 1097, 1106 (La.1990); Abadie v. Markey, 97-684 (La.App. 5 Cir. 3/11/98), 710 So.2d 327, 332. Furthermore, immunity statutes are strictly construed against the party claiming the immunity. Reed v. Employers Mut. Cas. Co., 32,257 (La.App. 2 Cir. 9/22/99), 741 So.2d 1285, 1287, writs denied, 752 So.2d 864 (La.2000), citing Monteville v. Terrebonne Parish Consolidated Gov't, 567 So.2d 1097, 1101 (La.1990)
Does the statute contemplate a specific impending emergency or general flood protection work performed over a long period of time when there is no specified emergency pending?
The law on statutory interpretation is well-defined. Legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves the search for the legislature's intent. La.C.C. art. 2; Lockett v. State, Dept. of Transp. and Dev., XXXX-XXXX (La.2004), 869 So.2d 87; Perritt v. Dona, 2002-2601 (La.2003), 849 So.2d 56, 65; Batson v. South Louisiana Medical Center, XXXX-XXXX (La.1999), 750 So.2d 949, 956; Ruiz v. Oniate, 1997-2412 (La.1998), 713 So.2d 442, 443; Detillier v. Kenner Regional Medical Center, XXXX-XXXX (La.2004), 877 So.2d 100. The paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the laws; rules of statutory construction are designed to ascertain and enforce the intent of the statute. One particularly helpful guide in ascertaining the intent of the legislature is the legislative history of the statute in question and related legislation. Grant v. Grace, 2003-2021 *31 (La.2004), 870 So.2d 1011. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La.C.C. art. 9; Lockett, supra at 2, 869 So.2d at 89; Perritt, supra at 65-66; Batson, supra at 956; Ruiz, supra at 443.
The starting point in the interpretation of any statute is the language of the statute itself. Theriot v. Midland Risk Ins. Co., 95-2895 (La.1997), 694 So.2d 184, 186; Touchard v. Williams, 617 So.2d 885 (La. 1993). Ambiguous text is to be interpreted according to the generally prevailing meaning of the words employed. La.C.C. art. 11. When the language of the law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La.C.C. arts. 10 and 12; Ruiz, supra at 444; Conerly v. State, XXXX-XXXX (La.1998), 714 So.2d 709, 710-711.
The Louisiana Disaster Act of which the "emergency preparedness immunity" is a part was first enacted in 1950 and contained in Louisiana Revised Statute 29:613. The statute was repealed in 1993 and the emergency preparedness immunity was incorporated into the Louisiana Emergency Assistance and Disaster Act by 1993 La. Acts, no. 800, § 1. The Act as amended was comprised of La.R.S. 29:721 through 736 and to repeal La.R.S. 29:701 through 716. In the wake of the September 11, 2001 terrorist attacks on the United States, the Act was amended in 2003 to specifically address homeland security, terrorist issues, and enemy attack by 2003 La. Acts, no. 40. Pursuant to this revision, the act was renamed "The Louisiana Homeland Security and Emergency Assistance and Disaster Act". In 2005, the Act was again amended to address matters relating to Hurricane Katrina and her aftermath by 2005 La. Acts, 1st Ex.Sess., No. 46, § 1. Notably, this statute has undergone major revisions twice in recent years, both times in response to a specific disaster.
Turning to the purpose for which the Louisiana Legislature enacted the Louisiana Emergency Assistance and Disaster Act of 1993, the legislature amended the statute because:
A. Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from enemy attack, sabotage, or other hostile action, or from fire, flood, earthquake, or other or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and generally to preserve the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary:
(1) To provide for designation of the Military Department, state of Louisiana, as the state emergency preparedness agency, and to authorize the creation of local organizations for emergency preparedness in the political subdivisions of the state.
(2) To confer upon the governor and upon the parish presidents the emergency powers provided by this chapter.
(3) That statewide and local plans for emergency preparedness be prepared and approved without further delay and be maintained current to the maximum extent possible.
(4) To reduce vulnerability of people and communities of this state to damage, injury, and loss of life and property resulting from natural or man-made catastrophes, *32 riots, acts of terrorism, or hostile military or paramilitary action.
(5) To prepare for prompt and efficient evacuation, rescue, care, and treatment of persons victimized or threatened by disasters or emergency.
(6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies and disasters.
(7) To authorize and provided for cooperation in emergency and disaster prevention, mitigation, preparedness, response, and recovery.
(8) To authorize and provide for management systems embodied by coordination of activities relating to emergency or disaster prevention, mitigation, preparedness, response, and recovery by agencies and officers of this state, and similar state-local, interstate, and foreign activities in which the state and its political subdivisions may participate.
La.R.S. 29:722, 1993 La. Acts, no. 800, effective June 22, 1993
It is obvious from the purpose written by the legislature for the enactment of the statutory scheme itself that the Louisiana Emergency Assistance And Disaster Act of 1993 with its attendant emergency preparedness immunity was intended to address specific disasters rather than general flood protection work.
The definitional section of the statute, La. R.S. 29:723 provides definitions which are suggestive of event specific implementation:
(1) "Disaster" means the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds, and other weather related events, forest and marsh fires, and man-made disasters, including but not limited to nuclear power plant incidents, hazardous materials incidents, oil spills, explosion, civil disturbances, public calamity, hostile military action, and other events related thereto.
(3) "emergency" means the actual or threatened condition which has been or may be created by a disaster.
(4) "emergency preparedness" means the mitigation of, preparation for, response to, and the recovery from emergencies or disasters. The term "emergency preparedness shall be synonymous with "civil defense", "emergency management", and other related programs of similar name.
Placing La.R.S. 29:735 in the context of the other provisions of the act, the act grants the governor the power to take government operations out of its everyday functions by declaring a state of emergency. La.R.S. 29:724. The act designates the Military Department as the emergency preparedness agency. La.R.S. 29:725. On the local level, the act grants the special powers to the parish president. La.R.S. 29:727. The act establishes local and regional offices of emergency preparedness. La.R.S. 29:729. All of these provisions suggest that the act as a whole is meant to take the government out of its general routine, and impose a state of government specifically structured towards the handling of a specific emergency.
Turning to the cases which have interpreted emergency preparedness immunity, emergency preparedness immunity pursuant to La.R.S. 29:735 has never been granted to activities performed outside of a declared state of emergency. Hontex v. City of Westwego, 02-506 (La.App. 5 Cir. 12/11/02), 833 So.2d 1234; Castille v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.App. 3 Cir. 3/2/05), *33 896 So.2d 1261; Freeman v. State, XXXX-XXXX (La.App. 4 Cir. 4/2/08), 982 So.2d 903; Clement v. Reeves, 2005-616 (La.App. 3 Cir. 6/28/06), 935 So.2d 279; Armstead v. Nagin, 2006 WL 3861769 (E.D.La.12/29/06).
In Clement v. Reeves, 2005-616 (La.App. 3 Cir. 6/28/06), 935 So.2d 279, plaintiff was suing the Parish of Lafayette for damages incurred during a December 20, 2002 car accident. Plaintiff alleged that the Parish failed to maintain an advance turn warning sign. The Parish argued it was immune from liability under the Louisiana Emergency Assistance and Disaster Act, because a state of emergency had been declared for the State of Louisiana and Lafayette Parish on October 1, 2002, in anticipation of Hurricane Lili. The state of emergency was extended statewide for an additional forty five days by Governor Mike Foster on October 31, 2002. Id. The third circuit affirmed the trial court's denial of Lafayette Parish's Motion for Summary Judgment. "Clearly, [the parish] was provided with immunity from negligence in its efforts to remedy the effects of Hurricane Lili during the state of emergency absent a showing of willful misconduct. (citing Castille v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.App. 3 Cir. 3/2/05), 896 So.2d 1261, writ denied, 902 So.2d 1029 (La. 2005)) However, at the time the state of emergency ended, [the parish] was no longer afforded immunity by the Louisiana Homeland Security and Emergency Assistance and Disaster Act." Clement, supra at 285.
In Hontex Enterprises, Inc. v. Westwego, this Court granted emergency preparedness immunity to a levee district. Hontex v. City of Westwego, 02-506 (La. App. 5 Cir. 12/11/02) 833 So.2d 1234. In Hontex, plaintiff operated a shrimp processing facility whose central plant was located in an area not protected by West Jefferson Levee Districts hurricane protection levee. In September 1998, Tropical Storm Frances pushed enormous amounts of water into the bayous and canals of Jefferson Parish, causing the Hontex facility to flood. Plaintiff operated their own pump station to remove water from the facility. One of plaintiffs pumps leaked water which spilled onto the property of an adjacent land owner. In response, the levee district built a ring levee around the leaking pipe. Hontex alleged that the ring levee caused the pump station to flood which, in turn, caused the freezers compressors to fail, resulting in the loss of three million dollars worth of frozen seafood. Id. at 1235-6. This Court affirmed the trial courts grant of summary judgment, holding that defendants were entitled to emergency preparedness immunity for the complained of actions, which took place during a declared state of emergency. Hontex, supra at 1235.
Interestingly, in Armstead v. Nagin, 2006 WL 3861769 (E.D.La.12/29/06), Federal Magistrate Judge Joseph Wilkinson gave La.R.S. art. 29:735 a much broader application. Judge Wilkinson held that the building and maintaining of levees for the purposes of flood control are intended as mitigation of and preparation for a disaster. Thus, he concluded such activities should be afforded emergency preparedness immunity. Id. at 15-16. On review, United States District Judge Stanwood Duval disagreed, giving the statute a much narrower interpretation. Judge Duval stated that he "did not agree with any tangential inference that acts or omissions of the Levee Board performed at times remote from Hurricane Katrina come under the ambit of the [emergency preparedness] immunity statute." Id. at 1. See also In re Katrina Canal Breaches, 2007 WL 496856 (E.D.La.2007)
*34 We agree with Judge Duval. In the context of this case we need not find that the statute is limited to activities which occur during a declared state of emergency. We do find that this statute was intended to address actions taken pursuant to a particular emergency, not to general levee construction. We find, therefore, that emergency preparedness immunity applies only when the activities complained of are taken to address a discreet or specific condition or event.
After reviewing the record, we find there was no evidence introduced on the hearing on the Motion for Summary Judgment that the activities complained of by appellants were performed in response to, or in preparation for a specific condition or event. There is no evidence to support a finding that the work done on the Gardere Canal by Jefferson Parish was an emergency preparedness activity. SELA was intended to provide general flood control and rainfall drainage systems. While these improvements may curtail the effects of emergencies, SELAs main objectives are general in nature. The parish has provided no evidence to support a finding that the Gardere Canal flood protection project was not general in nature. Accordingly, we reverse the district court's grant of summary judgment.
As to appellants' complaint that the Parish of Jefferson failed to carry its burden of proving its affirmative defense of immunity under the "Louisiana Homeland Security and Emergency Assistance and Disaster Act," La.R.S. 29:735, having found that the parish is not in this case entitled to emergency preparedness immunity pursuant to La.R.S. 29:735, we find that assignment of error one is moot.
As to assignment of error three, we also find that it is moot based on our finding that the parish is not immune pursuant to La.R.S. 29:735
Therefore, the judgment of the trial court granting summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The immunity statute at issue was first enacted in 1950 and contained in Louisiana Revised Statute 29:613. This statute was repealed in 1993 because the immunity provided therein was re-designated and incorporated into the "Louisiana Emergency Assistance and Disaster Act" by 1993 La. Acts, No. 800, § 1. The Act was amended again in 2003 to specifically address homeland security and terrorist issues in further detail. In its supporting memorandum submitted to the trial court, the Parish cited and was granted summary judgment pursuant to the 2003 amended version of this act. The events at issue here occurred between 1997 and 1998. Suit was filed in 2000. In briefs to this court, both parties acknowledge that the act as effective between 1993 and 2003 actually applies to this case. However, the reference to the post-2003 amended statute is harmless because the substance of the Act as it applies herein was not affected by the 2003 amendment.
[2] The parish in this motion for summary judgment did not assert the applicability of "discretionary immunity" under La.R.S. 9:2798 and we do not address the applicability of that statute here.