833 So.2d 1234 (2002)
HONTEX ENTERPRISES, INC.
v.
CITY OF WESTWEGO, Parish of Jefferson and West Jefferson Levee District, Board of Commissioners.
D.R.S. Trading Co., Inc. and Indemnity Insurance of North America
v.
Louisiana Packing Company, Inc., Hontex Enterprises Inc., The City of Westwego, The Parish of Jefferson and the West Jefferson Levee District, Board of Commissioners.
Nos. 02-CA-506, 02-CA-507.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2002.
Rehearing Denied January 16, 2003.
Darryl J. Carimi, Carimi Law Firm A Law Corporation, Metairie, LA, Attorneys for Plaintiff/Appellant, Hontex Enterprises, Inc.
*1235 John J. Molaison, Jr., Gretna, LA, Attorney for Defendant/Appellee, City of Westwego.
Christian B. Bogart, Kevin R. Derham, Duplass, Zwain, Bourgeois & Morton, Metairie, LA, Attorneys for Defendant/Appellee, West Jefferson Levee District, Board of Commissioners.
Darnell Bludworth, Christopher T. Chocheles, Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C., New Orleans, LA, Attorneys for Plaintiffs/2nd Appellants, D.R.S. Trading Co., Inc. and Indemnity Insurance Company of North America.
Bruce A. North, David L. Colvin & Associates, Gretna, LA, Attorney for Defendant/Appellee, Parish of Jefferson.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The plaintiffs, Hontex Enterprises, Inc. (Hontex) and D.R.S. Trading Co., Inc., and Indemnity Insurance Company of North America, (hereinafter referred to collectively as D.R.S.), have appealed the trial court's grant of summary judgment in favor of the defendants.
FACTS:
In September 1998, Tropical Storm Frances sat in the Gulf of Mexico for several days pushing an enormous amount of water into the bayous and canals of the west bank of Jefferson Parish. On September 9, 1998, the Parish President declared a state of emergency in the parish. Hontex operated a shrimp processing plant outside the hurricane protection levee system in the City of Westwego on the banks of Bayou Segnette. Hontex allegedly had three million dollars worth of frozen seafood in its freezers. The plant flooded and the seafood was lost. D.R.S. owned $106,000.00 of the frozen seafood. Hontex and D.R.S. filed individual lawsuits against Jefferson Parish, the City of Westwego, and the West Jefferson Levee District, claiming that their actions caused the plant to flood and the damage to the seafood. The suits were consolidated. All defendants filed motions for summary judgment that were granted by the trial court. Following the denial of plaintiffs' motion for new trial, Hontex and D.R.S. filed devolutive appeals. These appeals were consolidated.
The Hontex plant is accessed via a road that goes over a lower portion (gap) in the hurricane levee. As the water in bayou rose, the Hontex property began to take on water. On September 12, 1998, employees of Hontex called the city for sandbags and assistance in placing the sandbags along the banks of the bayou. The city responded and assisted Hontex employees in placing sandbags along the bank of the bayou. As the water continued to rise, the gap in the hurricane levee was filled with mud.
Hontex operates a pump station that pumps water from the plant grounds under the City of Westwego into the Mississippi River. This pump station is on the other side of the hurricane protection levee from the plant, that is, the pump station itself is located within the hurricane protection system within the levee system. A pipe from this system was spilling water onto the property adjacent to the plant. In response to a complaint from the adjacent landowner, employees of the city investigated the situation. The decision was made to build a ring levee around the pipe that was leaking water. The plaintiffs allege that the building of the ring levee around the pump station caused the pump station to flood and become inoperable. This in turn caused the plant to flood to such an extent that the compressors for *1236 the freezers became submerged in water and shorted out. The plaintiffs further allege that the act of filling the gap in the levee prevented them from accessing the plant to bring in trucks with carbon dioxide to keep the shrimp frozen.
In their motions for summary judgment, the defendants argue that they are immune from liability for their actions taken during this declared state of emergency. They contend that La. R.S. 29:735 affords them immunity from all acts taken due to the state of emergency. While they acknowledge that the statute provides for an exception to the immunity if there is willful or malicious conduct on the part of the state agency, they contend there is absolutely no indication of any willful or malicious conduct. They further argue that they are immune from liability for all acts taken that are discretionary in nature under La. R.S. 9:2798.1. They contend that they had no choice but to close the gap in the levee because the water from Bayou Segnette was entering the city through the gap. They contend that even if the Hontex pump would not have become inoperable, the pump would not have been able to keep up with the rain and rising bayou and the plant would have flooded any way. In addition, the City of Westwego argues the flooding was caused by an act of God over which they had no control.
In support of their position, the defendants attached the depositions of numerous people who were present at the Hontex facility on September 12, 1998.
Mr. Edward Lee, the majority shareholder and president of Hontex testified in his deposition that he acquired the shrimp processing plant in March 1988 and he knew the property was outside of the hurricane protection levee system. He wanted this property so the shrimpers could pull their boats up to the docks at the back of his property. He explained that the plant had flooded previously but there was never a flood that caused major destruction. He did not move the inventory because there was no damage to inventory in any previous floods. He explained that the two large freezers that contained the frozen seafood were elevated eight to ten inches above the surrounding ground. He acknowledged that on September 12, 1998, there was water on the plant grounds due to seepage from the bayou and heavy rain. His employee called for sandbags and they arrived. He estimated there was about six or seven inches of water on the plant grounds. The water later entered his office but it was unclear how high the level reached. He testified that the water was higher than his ankles but at no times did it go over the top of his shrimp boots. He testified that his pump system was handling the water, it would rise and the rain would slow down and the pumps would catch up, lowering the water level.
He testified that since he acquired the property the gap in the levee had never been closed prior to Tropical Storm Frances, nor was access to his plant limited in anyway. Although, he was not present when the gap was closed on September 12 th, he testified that his employees told him that they asked the driver of the dump truck to allow them to move a large truck off the property before they dumped the mud blocking the roadway. The truck driver called someone, then proceeded to dump the mud. He explained that the mud in the roadway is not what caused his freezers to flood, rather the mud in the roadway prevented him from bringing in equipment to protect the frozen products.
Mr. Lee testified that his two water discharge pumps pump 800 gallons of water per minute each. He explained that the building of the ring levee around the leaking pipe caused the pump station to flood rendering the pumps inoperable. He *1237 testified that had the pumps remained operable, the freezers would not have flooded.
Gerald Spohrer, executive director of West Jefferson Levee District (WJLD), testified in his deposition that the logs for emergency operations indicate that a call was received at 11:30 a.m. on September 12, 1998 stating that water was coming across the road from the gap in the levee in front of Hontex. He went to the area and when he arrived the gap had already been closed by City of Westwego employees. Mr. Spohrer testified that the levee in front of Hontex is six to six and a half feet high and the level of the gap is two and a half feet high. He estimated that if water was coming out over the road then the Hontex buildings had to have one to two feet of water inside. He did not speak to anyone at Hontex about closing the gap. Mr. Spohrer testified that the gap was routinely closed during times of high tides and this is generally done at the last minute because it is easy to do. He had no knowledge of the Hontex pump station or of the ring levee built around the leaking pipe. He testified that if the decision to build the ring levee had been made by WJLD employees, he would know about it. Mr. Sporher testified that he thought Hontex would have alternate access to their plant through the adjacent Bayou Segnette State Park. He further testified that during Tropical Storm Frances, tides were five feet above sea level and this in itself would have flooded Hontex but he did not know to what degree. He stated that there were no pumps that could have protected Hontex because there was no place to pump the water.
Robert Utley, the city superintendent for the City of Westwego, testified that Westwego councilmen Melvin Guidry received a phone call from Mitchell Robertson who lives near Hontex. Mr. Robertson stated that his house was being flooded due to water coming over the levee. Mr. Guidry spoke to Mr. Cahill of WJLD and sandbags were brought to the area. Mr. Utley testified that WJLD employees were busy with flooding in other areas of the parish, so WJLD asked city employees to close the gap at Hontex. He testified that when he arrived at the scene, water was flowing under Mitchell Robertson's house. The water was coming from a lift station that contained the Hontex pump. Water was also coming over the gap in the levee. Mr. Utley testified that water was entering Hontex from the bayou and city employees assisted in placing sandbags along the banks. He stated that this stopped a "good bit of the water coming through." Mr. Utley had no knowledge of the Hontex pump system. He testified that they were instructed on how to build the ring levee by Ron Besson, an assistant to Jefferson Parish Councilmen Lloyd Giardina. He stated that the decision to build the ring levee was either made by Besson, Guidry, or another Westwego councilmen, Gary Toups. He knew of no complaints from Hontex employees regarding closing the gap or building the ring levee.
Mr. Walter Maistri, director of emergency management for Jefferson Parish, testified by deposition that he was notified of a problem with the levee at the Hontex site and the responsibility for dealing with it was given to WJLD and the City of Westwego. He knew of no Jefferson Parish employees who were dispatched to work at the Hontex site. Mr. Maistri testified that Tropical Storm Francis caused a massive mountain of water to be pushed from the Gulf into the west bank of Jefferson Parish, resulting in extensive flooding throughout the west bank of the parish.
*1238 Ernest Alexander, a truck driver for WJLD, testified that he delivered one load of dirt to the Hontex site. The gap in the levee was closed and he dumped the dirt near an area where water was coming out of the ground. He testified that City of Westwego employees were building a ring levee around this area.
Ron Besson, administrative assistant to Councilman Giardina, testified that during Tropical Storm Frances, he drove around the west bank looking at the levees. He noticed a lot of activity near Hontex, so he investigated. He testified that the water was coming out of the bayou and they were trying to close the gap to prevent water from entering the city. He stated that there was a lot of water coming through a pipe or manhole cover and they were trying to correct this. Mr. Besson stated that there was no choice about closing the gap; it was either close the gap or flood the city. He testified that the parish played no part in the decision to close the gap. He had no knowledge about Hontex pump or drainage system. He stated that he may have answered general questions about the ring levee but had no specific recollection. He did not speak to any Hontex personnel, nor did he hear them speaking to anyone.
Westwego councilman Melvin Guidry testified that he was called by Hontex employee Martha Bourg who stated that they needed help at Hontex. When he arrived, the water was above the normal bank of Bayou Segnette and was in the plant. He estimated the water on the Hontex side of the levee to be 2 to 2½ feet deep. They added sandbags at the bank of the bayou but discontinued this effort when water started to go over the gap. He testified that Hontex employees were told to get all of their equipment out. This included trucks. Some trucks were moved, then there was one truck that came out the back of the plant as they dropped the load of mud on the roadway. Mr. Guidry testified that Mr. Utley told them to pull the truck on the levee to keep it out of the water. He testified that the city closed the gap at the direction of Mr. Cahill from WJLD. He stated that Mr. Cahill and Mr. Besson arrived on the scene together. They told him they did not have personnel to assist, but would send sand and plastic sheeting.
Mr. Guidry testified that Mr. Robertson, the homeowner whose land was adjacent to Hontex's pump station, came to him and asked him to stop the water coming out of the green pipe onto his property. Mr. Guidry testified that Mr. Besson told him to build a ring levee around this pipe. He testified that he did not know he was "ringing" the entrance to the underground pump station for Hontex. He testified that no one from Hontex spoke to him about the ring levee and no one stated it would cause a problem.
Chip Cahill, president of WJLD, testified that gap was closed at Hontex before WJLD got involved. He stated that he would have made the decision to close the gap had he known there was danger to the city because of the rising flood water. He testified the Mr. Spohrer was taking care of the Hontex area and he knew WJLD had sent materials to the site. He visited the site just to inspect. When he arrived, the gap was closed. He had no knowledge of the Hontex pump or the ring levee. He did not think a WJLB employee authorized the building of the ring levee. Mr. Cahill testified that there is another road to access the Hontex property.
Garrison Toups, a Westwego councilman, testified that when he arrived at Hontex, "they were already under water." Hontex was pulling trucks on the levee. He estimated the water on the Hontex property to be waist deep. He went to the *1239 Bayou Segnette pumping station, located adjacent to the Hontex property, to sandbag the pump station to protect it from the rising water. He saw the Hontex pump station overflowing and testified that he saw people beginning to construct a ring levee.
In opposition to the defendants motions for summary judgment, Hontex argues that the water from the bayou never rose to the level of the gap in the levee. Hontex contends that the defendants' act of filling the gap in the levee and blocking the entrance to their plant, prohibited them from being able to bring in additional equipment to protect their frozen products. Hontex further argues that the parish issued permits for their special pumping station to drain the property and the defendants' actions in ringing the pump station and rendering it inoperable causing the freezer to flood. Hontex contends there are questions of material fact as to each party's role in the action taken at the Hontex site, and whether the actions of those parties were protected under R.S. 29:735 and 9:2798.1. Hontex further argues that there are material issues of fact as to whether defendants' actions were malicious and wilful and whether this conduct caused their damages.
In supports of its position, Hontex attached the affidavits of Frederick Yang and David Lai. Mr. Yang, general manager of Hontex, attested that the water was seeping through at the bayou but the pumps were easily able to handle this water prior to the gap being closed and the road being blocked off. He stated that he and Mr. Lai asked officials not to block the road, but they did so prior to allowing Lai to remove a truck from the property. Mr. Yang stated that he told employees and officials that the ring levee would cause the plant to be flooded thereby threatening the freezers and damaging the contents. Mr. Yang stated that the combination of defendants' actions caused the freezers to defrost causing the loss of millions of dollars of seafood. He further stated that had defendants not taken this action, Hontex would not have suffered these losses. He stated that at no time did Bayou Segnette rise over the levee between Hontex and the bayou.
David Lai, plant manager of Hontex testified that he was in charge of work crews preparing for rising water. They filled sandbags to shore the levee between Hontex and the bayou. Although there was standing water on Hontex grounds, the pumps were draining it. Mr. Lai attested that when the road was blocked, the water level was well below the top of the levee. He protested the dumping of sand on the road and as he headed toward the exit to remove a large truck on the property, mud was dumped blocking his exit. Mr. Lai stated that a neighbor reported that water was occasionally bubbling out of an overflow line that was part of Hontex pumping system. Officials wanted to dump mud there, and Mr. Lai stated that he explained that this pumping station was essential to keep their property drained and to protect millions of dollars worth of seafood. The defendants responded that they had to protect the city and he explained the situation again. One to two hours after the ring levee was constructed, the pumps were flooded out and there was rising water in the plant. Mr. Lai stated if the road had not been blocked carbon dioxide could have been pumped into the freezers. He further stated that if the pumps had not flooded, the freezers would have continued to work. Mr. Lai concluded that defendants' employees ignored this information and acted in a reckless manner.
In opposition to defendants' motions for summary judgment, D.R.S. argues there *1240 are issues of material fact as to who decided to close the gap and build the ring levee. They contend there is an issue of fact as to whether defendants' actions were willful and intentional misconduct because they knew Hontex would flood as a result of their actions. They argue that there is a material issue of fact as to whether the defendants' actions constituted a taking. Finally, D.R.S. argues there is an issue of fact as to whether the defendants are constitutionally bound to compensate them for taking and damaging their property. They contend the cost of protection should be borne by the public in general not just the individual whose property has been sacrificed.
In her Reasons for Judgment, the trial judge stated the decision to block the roadway and build a levee around the pumping station were discretionary, tactical decisions taken to protect the citizens of Westwego from the threat of a flood. She found that these decisions were within the realm of discretionary functions grounded in social, economic, and public policy, and concluded each defendant was immune from liability under La. R.S. 9:2798.1. The trial court further found that the defendants were immune from liability for any emergency preparedness activities under La. R.S. 29:735. The trial court acknowledged that these statutes do not offer immunity for willful misconduct and found that there was no evidence of such conduct. Finally, the trial court stated:
Hence, this Court found that the state nor its political subdivisions owe compensation for property taken or damaged during an emergency when engaged in any emergency preparedness activities under La. Const. Art. I[sec] 4, except in cases of willful misconduct.
We agree that under La. R.S. 9:2798.1, the defendants are immune for acts of negligence for discretionary acts, and that the defendants have immunity for negligent acts taken to prepare for an emergency under La. R.S. 29:735. We further agree that there is no indication of willful misconduct on the part of the defendants. We do not think that the statements made by Mr. Yang and Mr. Lai in their affidavits amount to willful misconduct.
However, the trial court's position that immunity extends to taking of property is incorrect. The statutes granting immunity for discretionary acts and acts taken to prepare for an emergency do not override Art. 1 § 4 of the State constitution that provides for just compensation when private property is taken. Plaintiffs claim that the blocking of the gap in the levee and building a ring levee around the Hontex pump station constitutes a taking. Since we have determined that immunity does not extend to a taking we must decide whether the actions of defendants constitutes a taking.
This Court has previously held that a decision to raise the level of an existing levee is not a taking and is within the authority of WJLD. See Elmer v. West Jefferson Levee Dist., 01-249 (La.App. 5 Cir.), 803 So.2d 229. The driveway entrance or gap area of the levee in this case had been routinely closed during past high water periods. We reiterate our prior holding, applicable here, that the raising of an existing levee is not a taking.
Regarding the ring levee, plaintiffs contend that if their discharge pumps had been allowed to operate the flooding would have been controlled and no loss of property would have occurred.
While the defendants dispute amongst themselves who directed the construction of the ring levee, the defendants collectively take the position that the temporary ring levee built with sand bags around Hontex's pump station was necessary because *1241 flood water from outside the levee system was entering the City of Westwego through the pump station, thereby compromising the integrity of the flood protection system. The facts as set forth in the various depositions clearly establish that restricting the water that was being discharged from Hontex's pumps caused the pumps to fail. Hontex's pumps became inoperable because water from outside the levee was being released through an overflow line in Hontex's pump station inside the levee. This water was contained by the ring levee.
Hontex claims that the defendants caused its pumps to fail thereby creating damage to property. Hontex asserts that the purpose of their permitted pump station was to transfer waste water from their shrimp processing plant to the Mississippi River. The undisputed facts establish that the reason the ring levee was built was due to a breach in the flood protection system caused by an overflow line in Hontex's pump station that should not have been discharging water from outside the levee inside the levee. This breach in the flood protection system was corrected with a temporary sand bag ring levee. This was not a legal taking, which would entitle plaintiffs to damages. The construction of the temporary ring levee was not an action taken for the public good that deprived Hontex of some right to property or use of property. Rather, the building of the temporary ring levee was an action taken to protect the public due to a defective design or defective function of Hontex's water discharge system.
For the foregoing reasons, the judgment of trial court granting summary judgment is affirmed.
AFFIRMED.