Dear Colonel Kirkpatrick:
You requested of this office an opinion as to the interpretation of the immunity provisions contained in La.R.S. 29:721, et seq., the Louisiana Homeland Security and Emergency Assistance and Disaster Act (the "LHSEADA"), specifically with respect to La.R.S. 29:733.1; La.R.S. 29:735; La.R.S. 29:735.1; and La.R.S. 29:735.2.
The LHSEADA legislatively empowers governmental entities with enormous responsibilities which must be instantaneously implemented during crisis situations.(See La.R.S. 29:726). With this substantial responsibility comes the right of immunity for decisions made while engaged in any homeland security and emergency preparedness activity, except in casesof wilfull misconduct.
The development of qualified immunity as a defense against liability and suit based on an objective reasonableness standard commenced in the Supreme Court decision of Harlow v. Fitzgerald, 457 U.S. 800,102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
Examining whether to grant immunity to the defendant-officials inHarlow, the Court first noted that "government officials are entitled tosome form of immunity from suits for damages."[1] The Court then analyzed the policy goals *Page 2 
at stake in the immunity determination in order to determine whether the defendants were eligible for absolute immunity or a qualified immunity. The Court identified on one side of the immunity equation the interest of the individual in vindicating a breach of constitutional rights that would be especially grievous when resulting from abuse of office by a government official. On the other side of the immunity equation, the Court recognized society's interest in an efficient and effective government, which would be hampered by allowing lawsuits to proceed unhindered against government officials exercising discretion within the sphere of their official duties.
The Court observed that the costs to society of litigation brought against government officials include expenditure of time and money on litigation expenses, diversion of energy from public work, and deterrence of entrance into public office. Considering these costs of litigation, the Court noted that the fear of being sued deters "all but the most resolute, or the most irresponsible" from efficiently and steadfastly pursuing their official duties.
The United States Fifth Circuit Court of Appeal went even further inVander Zee v. Reno, 73 F.3d 1365 (5th Cir. 1996). In Vander Zee, a former bank executive brought a Bivens action against federal prosecutors in their individual capacity and also filed claims for declaratory and injunctive relief against the United States based upon alleged violations of due process arising from the agreement settling the government's forfeiture action against the bank.
The Vander Zee Court ruled, 73 F. 2d at 1368-69:
 The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. Mitchell v. Forsyth, 472 U.S. 511, 525-26, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). "Unless the plaintiffs allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Id. (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even limited discovery on the issue of qualified immunity "must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." Wicks v. Mississippi State Employment Serv., 41 F.3d 991, 994 n. 10 (5th Cir. 1995) (emphasis in original). *Page 3 
The Louisiana Legislature granted immunity to the State's political subdivisions in § 735 of the LHSEADA, supra, entitled "Immunity of Personnel", which provides in pertinent part as follows:
 A. Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.
The Act immunizes a broad array of actors and entities for a broad array of activities.
Section 723 (1) of the Act defines a "disaster" as an event which is "the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds, and other weather related events . . ." The Act defines "emergency" in section 723 (2)(a) as an "actual or threatened condition which has been or may be created by a disaster." As defined by section 723 (3) of the Act, "emergency preparedness" means "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters."
The Legislative history of R.S. 29:735 is instructive. The Legislature enacted R.S. 29:735 in 1993 through Act 800. The Abstract to Act 800 states that this new law includes immunity language previously contained in R.S. 29:613. The Legislature originally enacted R.S. 29:613 in 1950 by Act 38. The language of R.S. 29:613, is virtually identical to the text of R.S. 29:735:
 Neither the State not any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents employees, or representatives of any of them, engaged in any civil defense activities, while complying with or attempting to comply with this act or any rule or regulation promulgated pursuant to the provisions of this act shall be liable for the death of or any injury to persons or damage to property, as the result of such activity.
In Mercadal v. City of New Orleans, 192 So. 2d 234 (La.App. 4th Cir. 1967), plaintiffs filed a class action lawsuit against the city and the Sewerage and Water *Page 4 
Board ("SWB") for flooding in the aftermath of Hurricane Betsy. The Plaintiffs alleged the SWB disregarded the advice of the Orleans Levee District to close certain culverts to stop the flow of water into plaintiffs' neighborhood. The Louisiana Fourth Circuit affirmed the trial court's dismissal of plaintiffs' class action on the basis of the immunity provision of R.S. 29:613, (now La.R.S. 29:735).
A flurry of recent decisions regarding emergency preparedness litigations reinforces the legislative intent to immunize anyone performing emergency activity who is acting in good faith.
The recently decided case of Fossier v. Jefferson Parish, ___So.2d ___, 2008 WL 1735487 (La.App. 5 Cir. 2008), dealt with flooding in Jefferson Parish as a result of Tropical Storm Isadore in 2002. On the evening of September 25, 2002, Tropical Storm Isidore dumped a tremendous amount of rain on South Louisiana, especially Jefferson Parish. As much as 11 inches of rain fell in a twelve-hour period, and as a result, streets, homes, and businesses were flooded. In the wake of the storm, the Parish President declared a state of emergency for the parish.
On September 24, 2003, more than fifty residents and/or owners of property on three streets in unincorporated Jefferson Parish joined a lawsuit against the Parish of Jefferson, claiming that the Parish's actions caused the streets and plaintiffs' houses to flood, which damaged the plaintiffs' property. The plaintiffs specifically alleged that the Parish's drainage system altered the natural drainage pattern in their area, which led to more frequent flooding and diminished property values. Further, the plaintiffs contend that the Parish knew or should have known that its electricity-driven drainage pump system would not function without electrical power yet failed to provide a back-up power system.
Jefferson Parish filed a Motion for Summary Judgment arguing that it is immune from liability for damages pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La.R.S. 29:735, and the discretionary function doctrine, La.R.S. 9:2798.1. Specifically, the Parish argued that it was immune from liability for its actions in preparation for Tropical Storm Isidore, which was a declared state of emergency.
The Parish contended that the lack of generators at the pump stations all over the Parish was due to budget constraints, not willful conduct.
The Parish further argued that it is immune from liability for all acts taken that are discretionary in nature under La.R.S. 9:2798.1. The Parish contended that the fiscal decisions in question, including, but not limited to the level of the Parish's storm drainage capacity and its use of backup power systems, are discretionary. *Page 5 
Specifically, the Parish's financial resources dictated the level of flood capacity and the use of backup power systems that the Parish could afford.
The Fifth Circuit reviewed La.R.S. 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," and cited Cormier v. T.H.E. Ins. Co., 98-2208 (La. 9/08/99),745 So.2d 1, where the Louisiana Supreme Court explained the Discretionary Immunity doctrine as follows:
 Generally, `Discretionary Immunity' under La.Rev.Stat. 9:2798.1 applies to specific fact situations which satisfy the rule enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under Berkovitz, the court must first consider whether the government employee had an element of choice and his course of action was not specifically prescribed by the statute, regulation, or policy. Conduct cannot be discretionary unless it involves an element of judgment or choice. 108 S.Ct. at 1958. Thus, discretionary immunity will not apply when a specific course of action is prescribed as the employee has no rightful option but to adhere to the directive. Id. On the other hand, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. Kniepp v. City of Shreveport, 609 So.2d 1163 (La.App. 2 Cir. 1992), writ den. 613 So.2d 976 (La. 1993). If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence. Simeon v. Doe, 618 So.2d 848
(La. 1993). (Partial citations omitted).
The Fifth Circuit ruled:
 Applying the Berkovitz test to the facts of the instant case, we find that the decisions made in this case involved elements of judgment and choice, which means the Parish's actions were discretionary. Further, we find that Jefferson Parish has articulated social, economic and political considerations surrounding its decisions regarding the drainage system for this specific area, including financial *Page 6 
limitations, safety considerations, equipment availability, and feasibility.
In Freeman v. State of Louisiana, ___So.2d ___, 2008 WL 902907 (La.App. 4 Cir. 2008). a son, individually and on behalf of his mother's estate, filed suit seeking wrongful death and survivor's action damages against the state, state agencies and entities, their employees, former governor, and city mayor, after his elderly mother died after being evacuated from her home due to Hurricane Katrina, asserting that the defendants failed to provide aid to him and his mother following the hurricane, which they were obligated to do pursuant to state's emergency operations plan (EOP).
Mr. Freeman specifically alleged that, despite opening the Convention Center as a shelter, there were no medical personnel, triage, food or water at the Convention Center, and there was no transportation available to transport people with medical needs to medical facilities. The petition also alleged that the defendants were charged with a duty to provide adequate means for evacuation, transportation, shelter and medical care; however, the defendants, through gross negligence and willful misconduct, failed to fulfill their non-discretionary duties under the State's EOP.
The Fourth Circuit cited La.R.S. 29:722(A) to note that the LHSEADA, was enacted:
 [b]ecause of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, flood, earthquake, or other natural or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana,. . . .
The EOP was developed pursuant to this Act. La.R.S. 29:726. A provision for immunity from negligence was also incorporated into the Act. La.R.S.29:735A(1) provides:
Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees or representatives of any of them engaged in any homeland security and emergency preparedness *Page 7 
activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.
The Court ruled that, "It is clear from the language of the statute that the state and its political subdivisions and agencies are entitled to total immunity. Liability on the part of directors and/or heads and other employees of these political subdivisions or agencies can only be found in cases of willful misconduct. See Castille v. LafayetteCity-Parish Consolidated Gov't, 04-1569 (La.App. 3 Cir. 03/02/05),896 So.2d 1261."
In Castille v. Lafayette City-Parish Consol. Government, 896 So.2d 1261
(La.App. 3 Cir. 2005), the Third Circuit provided a detailed analysis of the Act and the theory behind the immunity.
The Court noted that Paragraph 1 of Section 723 identifies the type of disasters which triggers application of the Act. Paragraph 3 of Section 723 further explains that "emergency preparedness" activities covered by the Act include "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters."
The Act includes a provision immunizing state government entities and their employees from liability for damages resulting from emergency preparedness activities. The provision voids the immunity privilege for individual employees who have engaged in willful misconduct: "Neither the state nor any political subdivision thereof . . . nor, except in case of willful misconduct, the agents' employees . . . engaged in any . . . emergency preparedness activities . . . shall be liable for the death of or injury to persons, or damage to property, as a result of such activity." La.R.S. 29:735(A). The Act contains an exception for willful misconduct, so that City employees engaging in willful misconduct do not enjoy the protections of the Act.
The Court believed the limiting phrase "except in case of willful misconduct" refers only to employees or agents, not to a political subdivision. If the legislature had intended that phrase to apply to political subdivisions, as well as to individual employees, it would have inserted that phrase at the beginning or end of the sentence, rather than in the middle. A survey of other states' comparable immunity provisions in their emergency management statutes shows almost identical language in the majority of states.
For example, Kansas's Emergency Preparedness Act § 48-915(b) states:
 Whenever a proclamation is issued declaring a state of disaster emergency . . ., neither the state nor any *Page 8 
political subdivision of the state nor, except in cases of willful misconduct, gross negligence or bad faith, the employees, agents, or representatives of the state or any political subdivision thereof . . . shall be liable for the death of or injury to persons, or for damage to property, as a result of any such activity performed during the existence of such state of disaster emergency. . . .
The largely uniform language suggests that this construction of the statute was a deliberate choice on the part of the legislature. In contrast, Oregon's Emergency Management Services Act § 401.515(1) states:
 During the existence of an emergency, the state and any local government, any agent thereof or emergency service worker engaged in any emergency services activity . . . shall not, except in cases of willful misconduct, gross negligence or bad faith, be liable for the death or injury of any person, or damage or loss of property, as a result of that activity.
This language, as opposed to the previous language, would at least lend credibility to the argument that the exception applies to "the state and any local government," as well as to employees.
The Act was also applied to emergency preparedness activities inHontex Enterprises, Inc. v. City of Westwego, 833 So.2d 1234 (La.App. 5 Cir. 12/11/2002), writ denied, 852 So.2d 1041 (La. 9/5/2003). InHontex, the plaintiff operated a shrimp processing facility whose central plant was located outside the area of protection of the West Jefferson Levee District's hurricane protection levee.
The plaintiff operated its own pump station to remove water from its facility and water leaking from one of plaintiff's pumps spilled onto the property of an adjacent landowner. In response, the levee district built a ring levee around the leaking pipe. The plaintiff claimed that, by building this levee, plaintiff's pump station became inoperable, causing the compressors to fail and the facility to flood. The trial court granted the governmental defendants' motion for summary judgment on the issue of immunity and this Court affirmed. In so doing, this Court noted that, "defendants have immunity for negligent acts taken to prepare for an emergency under La.R.S. 29:735."[2] *Page 9 
The Louisiana Fifth Circuit's decision in Yates v. Elmer,2006 WL 3422220, (La.App. 5 Cir. 11/28/06) confirms that the Parish is similarly immune in connection with planning undertaken by the Parish.
In Yates, the Court, noting that immunity existed in connection with a levee district's raising of a levee in 1985-86 after Hurricane Juan and before flood damages in 1991, stated as follows:
 Under the defense of governmental immunity, the public entity is immune from liability for negligence when the acts are . . .taken to prepare for an emergency under R.S. 29:735. See: Hontex Enterprises, Inc. v. City of Westwego, 02-506 (la. App. 5th Cir. 2/11/02) 833 So.2d 1234, 1240; writ denied, 03-0505, (La. 9/5/03), 852 So.2d 1041 and 03-0455 (La. 9/5/03), 852 So.2d 1042.
It is interesting to note that, despite the clear jurisprudential opinion that public entities are immunity from liability for negligence when acts are taken in furtherance of the LHSEADA, the Third Circuit's recent ruling in Rogers v. State of Louisiana, 974 So. 2d 919 (La.App. 3rd Cir. 2008), implies that the immunity provisions are affirmative defenses and must be asserted in an original answer or the immunity is waived.
In Rogers, the Plaintiffs were injured on September 8, 2005, when the vehicle in which they were traveling was rear-ended by a vehicle being driven by a State Trooper when he fell asleep at the wheel. The Plaintiffs filed suit against the Louisiana Department of Public Safety Corrections and the Trooper on August 9, 2006. The Defendants answered the suit on September 14, 2006, denying liability. They asserted the limitations of liability for suits against the State as to damages and legal interest provided in La.R.S. 13:5106 and La.R.S. 13:5112, as well as the affirmative defense of immunity from liability for employees of public entities performing discretionary acts during the course and scope of their employment pursuant to La.R.S. 9:2798.1.
In April 2007, the Defendants filed a "Motion for Summary Judgment Urging Exception of No Cause of Action and Exception of No Right of Action," asserting that they were absolutely immune from liability, pursuant to La.R.S. 29:735 and La.R.S. 9:2800.17, because the accident which injured the Plaintiffs took place while the Trooper was fulfilling emergency response activities pursuant to the *Page 10 
state of Emergency declared by Governor Blanco following Hurricane Katrina. The Plaintiffs responded with a motion to strike affirmative defenses, pursuant to La. Code Civ.P. art. 964, on the grounds that the Defendants should not be allowed to disguise affirmative defenses as exceptions, so as to avoid La. Code Civ.P. art. 2005's requirement that affirmative defenses shall be set forth in the answer. To allow the Defendants to assert affirmative defenses at such a late date and on the eve of trial, Plaintiffs argued, would amount to trial by ambush.
The trial court granted the Plaintiffs' motion to strike affirmative defenses and denied as moot the Defendants' motion for summary judgment urging exceptions. The Defendants filed a notice of intent to apply for writ of review of the judgment, but according to the record, no writ was ever sought.
The Third Circuit began its analysis by examining La.R.S. 29:735(A)(1), entitled "Immunity of personnel," which is part of the LHSEADA, and Louisiana Revised Statutes 9:2800.17(A)(1), entitled "Immunity of state and political subdivisions; operational activities related to Hurricanes Katrina and Rita," provides as follows:
 The state, or any political subdivision thereof, or any public entity, meaning and including the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and their agents, employees, contractors, volunteers, or representatives engaged in any operational decisions or activities in the aftermath of Hurricanes Katrina and Rita shall not be civilly liable for the death of, or any injury to, any person or damage to property as a result of such activity, except in the event of gross negligence or willful misconduct.
The Rogers Court then noted that "[a]n affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits." Webster v. Rushing, 316 So.2d 111, 114
(La. 1975). The defendant's answer shall set forth all affirmative defenses. La. Code Civ. P. arts. 1003 and 1005. "In the absence of inclusion of an affirmative defense in the answer, evidence can be adduced thereon only in the absence of an objection thereto." Red BarnChems., Inc. v. Lassalle, 350 So.2d 1315, 1317 (La.App. 3 Cir. 1977).
The Court ruled, 974 So. 2d at 923, that,
 We are convinced that the trial court correctly characterized the immunity defenses urged by Defendants as affirmative defenses because if the defenses were to apply Plaintiffs' claims would be *Page 11 defeated on the merits. Our finding is bolstered by the fact that Defendants specifically pled the affirmative defense of immunity pursuant to La.R.S. 9:2798.1 in their original answer to Plaintiffs' petition. Given the fact that Defendants urged the additional immunity defenses at such a late date, coupled with Plaintiffs immediate objection, the trial court did not err in granting the motion to strike and not allowing Defendants to rely on the immunity statutes to defeat Plaintiffs' claims. Likewise, the trial court did not err in denying Defendants' exception of no right of action, which essentially amounted to a reassertion of the affirmative defenses that the trial court had stricken just three days prior to trial. Having so ruled, we need not determine whether Trooper Nelson's having fallen asleep at the wheel and striking the vehicle in which Plaintiffs were traveling amounted to gross negligence or willful misconduct.
There are no cases directly on point regarding the other three sections for which you are requesting an opinion.
Section 733.1 was amended as a result of Act 615 of the 2006 Regular Session of the Louisiana Legislature. This Act provided a disaster operation plan for service animals and household pets.
The Act simply added or household pets or service animals to the existing law so Section 1 now reads:
Any person or organization, public or private, owning or operating immovable property or other premises who voluntarily and without compensation grants a license or privilege or otherwise permits the designation by the state or local homeland security and emergency preparedness agency or use of the whole or any part of the immovable property or premises for the purpose of sheltering persons or householdpets or service animals during an actual, impending, mock, or practice emergency, together with his successor in interest, if any, shall not be liable for the death of, or injury to, any person or household pets orservice animals on or about such immovable property or premises during the actual, impending, mock, or practice emergency, or for loss of, or damage to, the property of such person, solely by reason or as a result of the license, privilege, designation, or use, unless the gross negligence or the willful and wanton misconduct of the person owning or operating the immovable property or premises or his successor in interest is the proximate cause of the death, injury, loss, or damage occurring during the sheltering period. *Page 12 
The immunity previously empowered through this section is now simply extended to any person or entity that gratuitously allows their property or facility to be utilized for the evacuation of household pets or service animals during an emergency.
Sections 735.1 and 735.2 also both arose out of the 2006 Regular Session of the Legislature.
House Bill 70 by Representative Durand became Act 244 and enacted La.R.S. 29:735.1. It provides:
 During a declared state of emergency anywhere in the state, any health care provider who in good faith voluntarily renders emergency care or first aid to assist persons injured as a result of the emergency whether the aid is rendered in the area subject to the declaration of emergency or elsewhere shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.
Also, in that same legislative session, HB 453 by Representatives Toomy, Johns, and Walker, along with Senator Hines became Act 696 and enacted La.R.S. 29:735.2. It provides:
 A. During a declared state of emergency, any health care provider who in good faith voluntarily renders emergency care, health care services, or first aid in areas subject to the declared state of emergency without charge to the recipient shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.
 B. Health care providers from other states employed by a corporate entity for the sole purpose of providing health care services to workers of that company and their family members at the work site may offer services in good faith and within the reasonable scope of their skills, training, and ability during a declared state of emergency and in areas subject to the declared state of emergency. They shall possess a current professional license and be in good standing in their state and shall have in their personal possession a copy of their state license *Page 13 
and photo identification. Health care providers who render services in accordance with this Section shall additionally present a copy of their state license and photo identification to the appropriate Louisiana licensing board as soon as they are able to electronically transmit the documents from the work site or within two weeks of beginning service.
 C. Corporate entities shall be responsible for deploying licensed health care professionals in good standing in their respective state.
After reviewing the legislative history of the LHSEADA, and specifically, La.R.S. 29:735, along with the case law regarding immunity, it is the opinion of this office that the immunity provisions contained in the Act must be broadly interpreted to afford immunity to anyone who is engaged in any homeland security and emergency preparedness activity, except in cases of wilfull misconduct.
Essential personnel, such as a bus driver, employed by a governmental entity in the furtherance of performing emergency management services would also be immune from any liability, except in cases of wilfull misconduct.
Additionally, with respect to firearms, La.R.S. 14:329.6, (Proclamation of state of emergency; conditions therefor; effect thereof) provides guidance for protecting life and property during times of great public crisis, disaster, rioting, catastrophe, or similar public emergency.
Paragraph (H)(1) states:
 H. (1) Nothing in this Section shall authorize the seizure or confiscation of any firearm or ammunition from any individual who is lawfully carrying or possessing the firearm or ammunition except as provided in Paragraph (2) of this Subsection.
While not a part of the LHSEADA, this statute will prevail during the conditions described therein. Therefore, it is also the opinion of this office that anyone lawfully carrying or possessing a firearm or ammunition may not have this property confiscated during an emergency situation. This does not, however, require that the entity rendering aid or service must allow the firearm's possessor admission with the firearm. The law simply prevents confiscation of the firearm.
Additionally, HB 53 was passed during the 2008 Regular Session of the Louisiana Legislature which amends La.R.S. 735.2 to provide immunity to a *Page 14 
health care provider who voluntarily renders emergency care "anywhere in the state to assist person injured. . ."
HB 1127 was also passed and sent to the governor during the 2008 Regular Session. It provides that any religious organization qualified as a nonprofit taxexempt organization under Section 501 (c) of the Internal Revenue Code of 1954, as amended, or any officer, employee, or volunteer thereof, who gratuitously renders any evacuation assistance or recovery services of any kind to other persons in advance of, during, or following, a hurricane or tropical storm, declared by the United States National Oceanic and Atmospheric Administration's National Weather Service or during a declared state of emergency, shall not be liable to any person for whom such services are rendered for any injury, death, loss, civil penalty, or damage as a result of any act or omission in rendering assistance, relief, or recovery services.
Therefore, it is the opinion of this office that the relative immunity provisions contained in the law will apply to anyone who is engaged in any homeland security and emergency preparedness activity, except in cases of wilfull misconduct.
 Yours very truly,
 JAMES D. "BUDDY"CALDWELL
 ATTORNEY GENERAL
 By:___________________________
 WILLIAM P. BRYAN, III
 Assistant Attorney General
 JDC/WPB, Ill/sfj
[1] Harlow v. Fitzgerald, 457 U.S. at 802
[2] Hontex, 833 So.2d at 1240. See also Castille v. LafayetteCity-Parish Consolidated, Ltd. 2005-0860 (La.App. 3rd Cir. 3/2/05),896 So.2d 1261, writ denied, 902 So.2d 1029, 2005-0860 (La. 5/13/05) (the court held that the city enjoyed immunity under LSA R.S. 29:735 from damages sustained as a result of emergency preparedness activities during Hurricane Lili, including plaintiffs' damages resulted from the relocation of debris as a part of the City's cleanup activities after Hurricane Lili).